**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

OONA O. SPERR,

Plaintiff,

v.

SID R. BASS and ALTHEA IRENE VIAFORA BASS,

Defendants.

Civil Action No. 1:26-CV-07440

**DEFENDANT ALTHEA IRENE VIAFORA BASS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**INTRODUCTION** .......... 1

**BACKGROUND** .......... 1

**LEGAL STANDARD** .......... 6

**ARGUMENT** .......... 6

I. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS FRIVOLOUS (COUNT VI) .......... 8

A. Plaintiff Fails To Allege A Valid Oral Contract Between Plaintiff And Sid Bass .......... 9

B. Plaintiff Fails To Allege That Althea Had Knowledge of A Purported Oral Contract .......... 13

C. Plaintiff Fails To Allege That Althea Intentionally Procured Any Breach of the Purported Oral Contract .......... 15

II. PLAINTIFF FAILS TO ALLEGE A "CONSTRUCTIVE TRUST" CLAIM AGAINST ALTHEA BASS (COUNT V) .......... 17

A. Plaintiff Does Not State A Claim For Constructive Trust Under New York Law .......... 18

B. Plaintiff Does Not State A Claim For Constructive Trust Under Colorado or Texas Law .......... 21

**CONCLUSION** .......... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ....13, 14

*Almazan v. Almazan*,
2015 WL 500176 (S.D.N.Y. Feb. 4, 2015) ....10, 18

*Armenante v. Flying Colours Corp.*,
2026 WL 775666 (S.D.N.Y. Mar. 19, 2026) ....9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....6

*Atateks Foreign Trade Ltd. v. Dente*,
798 F. Supp. 2d 506 (S.D.N.Y. 2011) ....3, 18, 19

*In re AXA Equitable Life Ins. Co. COI Litig.*,
595 F. Supp. 3d 196 (S.D.N.Y. 2022) ....8

*Beck v. City of N.Y.*,
No. 12 Civ. 9231 (RA), 2014 WL 80544 (S.D.N.Y. Jan. 3, 2014) (Abrams, J.) ....6

*Beecher v. Feldstein*,
8 A.D.3d 597 (2d Dep't 2004) ....16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....16

*Bendit v. Canva, Inc.*,
No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023) ....6

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) ....9

*Beverly Found. v. W.W. Lynch*,
301 S.W.3d 734 (Tex. App. 2009) ....21

*Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*,
181 A.D.2d 551, 581 N.Y.S.2d 50 (1992) ....11

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
546 F. Supp. 3d 204 (W.D.N.Y. 2021) .... *passim*

*Dane v. UnitedHealthcare Ins. Co.*,
974 F.3d 183 (2d Cir. 2020)....................11

*DarkPulse, Inc. v. EMA Fin., LLC*,
2023 WL 2307386 (S.D.N.Y. Mar. 1, 2023)....................18

*Felsen v. Sol Cafe Mfg. Corp.*,
24 N.Y.2d 682 (1969)....................17

*Foster v. Churchill*,
87 N.Y.2d 744 (1996)....................17

*Friesel v. Bank of Am., N.A.*,
2025 WL 1224831 (S.D.N.Y. Apr. 24, 2025)....................19

*Gan v. GSUIG Real Est. Member LLC*,
797 F. Supp. 3d 69 (E.D.N.Y. 2025)....................13, 14, 15

*In re Genger*,
2021 WL 3574034 (Bankr. S.D.N.Y. Aug. 12, 2021)....................18

*Harris v. Home Indem. Co.*,
6 A.D.2d 861, 175 N.Y.S.2d 603 (N.Y. App. Div. 1958)....................10

*Hubbard v. Shankle*,
138 S.W.3d 474 (Tex. App. 2004)....................4, 22

*J&R Multifamily Grp., Ltd. v. U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of UBS-Barclays Com. Mortg. Tr. 2012-C4, Com. Mortg. Pass-Through Certificates, Series 2012-C4*,
2019 WL 6619329 (S.D.N.Y. Dec. 5, 2019)....................8

*JPMorgan Chase Bank v. 29-33 Ninth Ave., LLC*,
710 F. Supp. 3d 259 (S.D.N.Y. 2024).................... *passim*

*Katz v. Katz*,
197 Misc. 412, 95 N.Y.S.2d 863 (Sup. Ct. 1950)....................1, 7

*Kinsey v. New York Times Co.*,
991 F.3d 171 (2d Cir. 2021)....................8

*Klein v. Smigel*,
44 A.D.2d 248, 354 N.Y.S.2d 117 (1st Dep't 1974)....................2, 10

*Krystkowiak v. W.O. Brisben Cos.*,
90 P.3d 859 (Colo. 2004) (en banc)....................9

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413, 668 N.E.2d 1370 (1996)....................8

*Makransky v. Makransky*,
242 A.D.3d 977, 245 N.Y.S.3d 99 (N.Y. App. Div. 2025) .................... *passim*

*Mark QQ v. Jennifer PP*,
52 Misc. 3d 519, 34 N.Y.S.3d 875 (N.Y. Fam. Ct. 2016) ....................7

*McAnulty v. Standard Ins. Co.*,
81 F.4th 1091 (10th Cir. 2023) ....................4, 22

*McKeown v. Frederick*,
39 Misc. 3d 1241(A), 975 N.Y.S.2d 367 (Sup. Ct. 2013) ....................19

*Miller v. Levi & Korsinsky, LLP*,
2021 WL 535599 (S.D.N.Y. Feb. 12, 2021)....................9

*Morally v. Marabella Partners, LLC*,
2006 WL 2038388 (D. Colo. July 19, 2006) ....................3, 21

*Morone v. Morone*,
50 N.Y.2d 481, 413 N.E.2d 1154 (N.Y. 1980)....................7

*Obergefell v. Hodges*,
576 U.S. 644 (2015)....................17

*RE/MAX, LLC v. Quicken Loans Inc.*,
295 F. Supp. 3d 1163 (D. Colo. 2018)....................9

*Roach v. Berland*,
No. 3:13-CV-4640-D, 2014 WL 6772612 (N.D. Tex. Dec. 2, 2014)....................3, 21

*Rock v. Rock*,
100 A.D.3d 614, 953 N.Y.S.2d 165 (2d Dep't 2012)....................19

*Silver v. Starrett*,
176 Misc. 2d 511, 674 N.Y.S.2d 915 (Sup. Ct. 1998)....................7

*Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*,
2021 WL 877716 (D. Colo. Mar. 9, 2021) ....................21

*TileBar v. Glazzio Tiles*,
723 F. Supp. 3d 164 (E.D.N.Y. 2024) ....................14

*Transition Invs., Inc. v. Allen O. Dragge, Jr. Fam. Tr.*,
2011 WL 5865149 (S.D.N.Y. Nov. 21, 2011)....................18

*Watkins v. Harlem Ctr. for Nursing & Rehab., LLC*,
2021 WL 4443968 (S.D.N.Y. Sept. 28, 2021)....11

*Whiteside v. Hover-Davis, Inc.*,
995 F.3d 315 (2d Cir. 2021)....6

*Yedvarb v. Yedvarb*,
237 A.D.2d 433 (2d Dep't 1997)....10

**Statutes**

N.Y. Civil Practice Act § 61-b (1935)....1

N.Y. Civil Rights Law § 80-a....1

N.Y. Gen. Oblig. Law § 5-701(a)(1)....10

N.Y. Gen. Oblig. Law § 5-703(1)....10, 11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)....1, 6

Defendant Althea Irene Viafora Bass ("Althea") respectfully submits this Memorandum of Law in Support of her Motion to Dismiss Plaintiff's Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff Oona Sperr's lawsuit against Althea (and her husband Sid Bass) asserts frivolous claims that the New York legislature effectively abolished nearly a century ago. With respect to Althea, Plaintiff asserts claims for tortious interference and constructive trust relating to a vague "oral contract" for a "lifelong partnership," but those claims are neither plausible nor cognizable. Indeed, the New York Legislature enacted "anti-heart balm" legislation in the 1930s, which expressly abolished claims for alienation of affection and common-law marriage, presciently recognizing that lawsuits by purportedly heartbroken lovers are "commonly the vehicle for fraud and extortion." *Katz v. Katz*, 197 Misc. 412, 413, 95 N.Y.S.2d 863 (Sup. Ct. 1950); *see also* N.Y. Civil Practice Act § 61-b (1935) ("The rights of action heretofore existing to recover sums of money as damage for the alienation of affections, ... seduction, or breach of contract to marry are hereby abolished") (now codified at N.Y. Civil Rights Law § 80-a).

And that's precisely what this lawsuit is. Plaintiff's nearly 100-page Complaint contains serious allegations attacking Althea's character, professional history, and motives, while asserting legally deficient claims and demanding $400 million. To be clear: Plaintiff's allegations are false. The Complaint's description of Althea bears no resemblance to her actual professional history, financial independence, character, or decades-long friendship with Sid—omitting, among other things, that Althea had built an independent professional and financial life over decades, long before her relationship with Sid became romantic, and that Althea and Sid knew one another as friends for nearly ***four decades*** before that longstanding friendship developed into a romantic relationship and ultimately marriage late in their lives.

Plaintiff portrays Althea as someone who entered Sid's life only recently in a purported effort to "displace" Plaintiff. The actual history is fundamentally different. Althea had a decades-long professional career in the New York and international art world—as a gallerist and dealer, curator, educator, and gallery executive, including significant institutional and international work. Althea and Sid have known each other since the 1980s. And Althea and Sid's marriage is built on common passions, mutual admiration, and deep love. Were this case to enter discovery, Plaintiff's allegations not only would be proven false, but also would be subject to sanctions.

This case, however, should never get to discovery. As to Althea, Plaintiff asserts only two claims: "tortious interference" with a purported "oral agreement," (Count VI), and "constructive trust" (Count V). Neither makes it out of the starting gate.

***First***, Plaintiff fails to allege tortious interference with contract. This claim fails at the outset because there is no enforceable "contract" with which Althea could have "interfered." Plaintiff's demands for "lifelong financial support" instead are foreclosed by the Statute of Frauds, which exists to protect people from alleged contractual obligations "not supported by written evidence" of the type Plaintiff asserts here. *See Klein v. Smigel,* 44 A.D.2d 248, 354 N.Y.S.2d 117, 120 (1st Dep't 1974). Plaintiff further fails to allege sufficient facts to make her alleged "oral contract" definite or even plausible. Plaintiff fails to allege when, exactly, the contract was made, and fails to allege its key terms—even in this lawsuit, Plaintiff makes enormous monetary demands of "$400 million" (Compl. ¶ 257), with no explanation for how that number purportedly relates to any contractual term.

Even if this purported contract were enforceable (contrary to law), Plaintiff fails to allege other elements required for tortious interference. There are no "specific allegations" explaining how Althea somehow could have known of an asserted contract Plaintiff failed to write down,

*JPMorgan Chase Bank v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 279 (S.D.N.Y. 2024), much less well-pled facts explaining how Althea had "actual knowledge" of at least some of its relevant "terms and conditions," *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 211–12 (W.D.N.Y. 2021). And Plaintiff also cannot allege that Althea acted with intent to procure any breach of Plaintiff's purported "oral contract," especially where Plaintiff's allegations at most show that Althea acted incident to the lawful purpose of dating and marrying the man she loves.

***Second***, Plaintiff fails to allege a "constructive trust" claim under any relevant state law. Plaintiff appears to assert property interests spanning from New York to Colorado to Texas, ignoring that New York requires many elements not alleged here—including "a confidential and fiduciary relationship with [the Defendant]," which Plaintiff cannot allege and which therefore is "fatal to [her] claim for a constructive trust." *Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506, 507–08 (S.D.N.Y. 2011) (granting dismissal). Constructive trust claims in New York further require a "promise" (which Plaintiff does not plausibly allege) and a "transfer in reliance" on the promise, *Makransky v. Makransky*, 242 A.D.3d 977, 979–80, 245 N.Y.S.3d 99 (N.Y. App. Div. 2025). Those requirements, too, independently foreclose any New-York-law claim asserted by Plaintiff (who does not allege she transferred anything to Althea).

Plaintiff's constructive trust claim fares even worse under Colorado and Texas law. Under those States' laws, "constructive trust … do[es] not constitute a separate cause[] of action." *Morally v. Marabella Partners, LLC*, 2006 WL 2038388, at *8 (D. Colo. July 19, 2006); *see also Roach v. Berland*, No. 3:13-CV-4640-D, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014) (similar). And even if those States *did* permit independent claims for constructive trust, Plaintiff again would fail to allege them. Plaintiff does not allege the "*specifically identifiable property*"

upon which to seek a constructive trust, *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1099 (10th Cir. 2023) (addressing Colorado law), fails to allege unjust enrichment or any type of fiduciary relationship, and, for similar reasons, fails to allege the "specifically identifiable res" needed under Texas law, too. *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App. 2004).

In short, Plaintiff has attempted to convert the end of her personal relationship with Sid into legally deficient claims against his wife, while using this lawsuit as a vehicle to attack Althea's character, career, and marriage. This lawsuit has no place in court and it should be swiftly dismissed with prejudice.

## BACKGROUND

The Complaint contains material errors, omissions, and mischaracterizations that distort Althea's professional history, financial independence, and longstanding relationship with Sid. Although those mischaracterizations cannot cure the Complaint's legal deficiencies, they warrant correction.

Althea built an independent professional career in the arts over decades, beginning long before her relationship with Sid became romantic. Beginning in the 1980s and continuing through the early 1990s, Althea founded and ran the Althea Viafora Gallery at several locations in Manhattan, developing an independent exhibition program and curatorial practice. Although many artists with whom Althea worked later would become internationally acclaimed, Althea (who could not have foreseen that future fame) chose to display their work because Althea believed in them and the cultural value they contributed. Through her gallery and curatorial work, Althea developed a reputation for identifying, contextualizing, exhibiting, and educating others about significant contemporary art, including conceptual, abstract, minimalist, and sculptural work.

In the early 1990s, Althea stepped back from her gallery to care for her longtime partner, Peter Jay Sharp. Peter was also the person who first introduced Althea to Sid in the early 1980s.

After Peter became seriously ill, Althea witnessed Sid's concern for and friendship with Peter. After Peter's passing in 1992,[1] Sid checked in on Althea, and they, too, became friends.

Althea remained engaged in her career for many years while remaining Sid's friend. Over the ensuing decades, Althea continued to build an independent professional life, including work as an Associate Director at Hauser & Wirth, and in significant teaching roles. Althea held faculty appointments at Sotheby's Institute of Art, teaching courses in gallery business, collection building, and art advisory. She also taught Gallery Business in the Institute's MA Art Business program with Tsinghua University, and Art & Business at The School of The New York Times. These were substantive professional roles reflecting a career that developed independently over decades. In tandem with her career success, Althea further was (and is) financially independent. The allegation that Althea sought investment advice (Compl. ¶¶ 6–7) admits Althea's independent assets, and the advice she sought concerned her own money. Althea asked Sid for advice because she respected his business judgment—not because she sought financial support from him.

Althea and Sid's friendship—not money—formed the basis for their future romance. The pair kept in touch, with Sid offering comfort and emotional support for Althea, including in trying times, like Althea's mother's passing in 2019. Althea and Sid remained in contact over the years, including through telephone calls and walks together when Althea was in New York. And their friendship deepened further in 2024, when Sid offered Althea friendship and support during her treatment for skin cancer.

Eventually, after decades of friendship and shared interests, Althea and Sid began to recognize that their relationship had developed into something more. Sid invited Althea to visit

[1] *See* Peter J. Sharp '52, Princeton Alumni Weekly (July 2024), available at https://paw.princeton.edu/memorial/peter-j-sharp-52.

him in Colorado (an invitation Althea accepted), and the two began exploring whether their longstanding friendship had become romantic.

In the months that followed, their relationship developed into a loving romantic partnership. Ultimately, in August 2025, Sid and Althea got married in an intimate ceremony on San Jose Island, Texas. Contrary to Plaintiff's suggestion that this was a "sham marriage" (Compl. ¶ 193), Sid and Althea were surrounded by close family and friends.

## **LEGAL STANDARD**

"To survive a motion to dismiss," under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bendit v. Canva, Inc.*, No. 23-CV-473 (RA), 2023 WL 5391413, at *2 (S.D.N.Y. Aug. 22, 2023) (Abrams, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (granting motion to dismiss). "[W]here a plaintiff pleads facts that are merely consistent with a defendant's liability, her complaint stops short of the line between possibility and plausibility, and she fails to demonstrate an entitlement to relief." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323–24 (2d Cir. 2021) (quotations and brackets omitted) (affirming dismissal).

Additionally, because "generalized and conclusory allegations" are "insufficient" to survive a motion to dismiss, *Bendit*, 2023 WL 5391413, at *6, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Beck v. City of N.Y.*, No. 12 Civ. 9231 (RA), 2014 WL 80544, at *1 (S.D.N.Y. Jan. 3, 2014) (Abrams, J.) (quoting *Iqbal*, 556 U.S. at 678) (granting motion to dismiss).

## **ARGUMENT**

The New York legislature and courts have made clear that claims by non-marital jilted lovers, such as those asserted here by Plaintiff, have no place in court. The decision to limit judicial intervention in disputes attending the end of non-marital, romantic relationships is well supported

by compelling legal and policy reasons. For example, the New York Legislature has abolished common-law marriage precisely "because attempts to collect funds from decedents' estates were a fruitful source of litigation," and because "there was no built-in method for distinguishing between valid and specious claims." *Morone v. Morone*, 50 N.Y.2d 481, 413 N.E.2d 1154 (N.Y. 1980) (addressing this history); *see also Katz v. Katz*, 197 Misc. 412, 413, 95 N.Y.S.2d 863 (Sup. Ct. 1950) (claims based on common-law marriage were a "vehicle for fraud and extortion"). "New York courts have emphatically rejected" awards for "palimony" between unmarried former partners. *Silver v. Starrett*, 176 Misc. 2d 511, 514, 674 N.Y.S.2d 915, 918 (Sup. Ct. 1998). And claims for "alienation of affection," alleging that a partner "had been seduced by another," similarly have been abolished as "against public policy." *Mark QQ v. Jennifer PP*, 52 Misc. 3d 519, 521–22, 34 N.Y.S.3d 875 (N.Y. Fam. Ct. 2016).

In *Morone*, the New York Court of Appeals further rejected claims for "implied contract" between unmarried romantic partners, reasoning that such claims also are "contrary to both New York decisional law and the implication arising from our Legislature's abolition of common-law marriage." 50 N.Y.2d at 489. The New York Court of Appeals reasoned that "[f]or courts to attempt through hindsight to sort out the intentions of the parties and affix jural significance to conduct carried out within an essentially private and generally noncontractual relationship runs too great a risk of error." *Id.* at 488. "[T]here is … substantially greater risk of emotion-laden afterthought, not to mention fraud, in attempting to ascertain by implication what services, if any, were rendered gratuitously and what compensation, if any, the parties intended to be paid." *Id.* at 488.

The gravamen of this lawsuit violates New York's clear policy preference against judicial adjudication of these non-marital claims, and recasting such claims as breach of an oral contract,

or, in the case of Althea, tortious interference with an oral contract (Count VI) and constructive trust (Count V), does not save Plaintiff's Complaint. And, in any event, Plaintiff comes nowhere near alleging plausible claims against Althea. The Complaint's vague assertions—e.g., that Althea had "knowledge of Oona's … position" (Compl. ¶ 253) when Althea married Sid—fall far short of establishing cognizable wrongdoing.

Accordingly, the Court should dismiss all claims against Althea.

## I. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM IS FRIVOLOUS (COUNT VI).

Plaintiff fails to allege tortious interference (Count VI) against Althea for multiple, independent reasons. To state a claim for tortious interference with contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *JPMorgan Chase Bank, 710 F. Supp. 3d at 279.*; *see also Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370 (1996) (similar).[2] These

[2] Plaintiff does not specify whether she brings Count VI under New York or another State's law. In addressing choice-of-law questions, federal courts sitting in diversity apply the choice-of-law rules of their forum state. *See Kinsey v. New York Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021). Here, New York choice-of-law rules require a two-step inquiry, assessing first, whether there is an "actual conflict" between differing state laws, and second, if there is a conflict, applying "the law of the state with the most significant interest in the litigation." *Id.* In addressing tort claims, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *J&R Multifamily Grp., Ltd. v. U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of UBS-Barclays Com. Mortg. Tr. 2012-C4, Com. Mortg. Pass-Through Certificates, Series 2012-C4*, 2019 WL 6619329, at *6 (S.D.N.Y. Dec. 5, 2019). A tort often is said to "occur in the place where the injury was inflicted, which is generally where the plaintiffs are located," *id.* (applying law of plaintiff's domicile), but this rule does not "always govern[]," and does not "trump a full interest analysis," *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 239 (S.D.N.Y. 2022).

Here, Plaintiff asserts that her purported oral agreement with Sid was made in New York, *see* Compl. ¶ 252, that Althea cultivated a relationship with Sid while in New York, *id.* ¶ 254, and that Plaintiff is domiciled in New York, *id.* ¶ 47. On the other hand, Plaintiff also alleges that the

elements require well-pleaded facts. To state a tortious interference claim, a party cannot simply "assert in a conclusory manner" that a party knew of and interfered with some vague agreement. *Id.*; *see also Miller v. Levi & Korsinsky, LLP*, 2021 WL 535599, at *8 (S.D.N.Y. Feb. 12, 2021) (collecting cases dismissing tortious interference claims based on "conclusory allegations").

Plaintiff fails to plausibly allege several necessary elements here.

### A. Plaintiff Fails To Allege A Valid Oral Contract Between Plaintiff And Sid Bass.

To begin, Plaintiff fails to allege the first element of her claim—a valid contract. Where a plaintiff "ha[s] failed adequately to allege the existence of a valid … Agreement," there is nothing to interfere with. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (granting dismissal). And, where breach-of-contract claims are dismissed, related tortious interference claims must be similarly dismissed. *See, e.g.*, *Armenante v. Flying Colours Corp.*, 2026 WL 775666, at *7 (S.D.N.Y. Mar. 19, 2026).

Plaintiff fails to allege a valid contract here. Althea incorporates by reference Sid's arguments in his motion to dismiss on this issue. In brief, the purported oral agreement cannot support a tortious interference claim for two fundamental reasons: (i) any such oral agreement is invalid under New York's Statute of Frauds, and (ii) Plaintiff does not even plausibly allege any such oral agreement.

---

purported tortious interference "culminated" while Plaintiff was staying temporarily at one of Sid's homes in Colorado. *Id.* ¶ 8.

The Court need not now decide whether New York or Colorado law applies for Count VI because there are no "material" conflicts between the two States' tortious interference law. Like New York, Colorado requires a plaintiff to allege breach of a valid contract, knowledge of that contract, and intent. *See*, *e.g.*, *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1175 (D. Colo. 2018); *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 871 (Colo. 2004) (en banc). Plaintiff's tortious interference claim therefore fails for the same reasons regardless of which State's law applies.

***First***, Plaintiff's alleged oral contract with Sid fails from the jump because it is plainly barred by New York's Statute of Frauds, which exists to protect people from alleged contractual obligations "not supported by written evidence." *See Klein v. Smigel,* 44 A.D.2d 248, 354 N.Y.S.2d 117, 120 (1st Dep't 1974). Plaintiff's alleged contract violates that statute in two independent ways: (1) an oral contract is "void" where the contract "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime," N.Y. Gen. Oblig. Law § 5-701(a)(1); and (2) an oral contract for the disposition of an "interest in real property" is unenforceable unless accompanied "by a deed or conveyance in writing," N.Y. Gen. Oblig. Law § 5-703(1).

As to the first violation, Plaintiff admits that the oral agreement would not terminate before the end of her lifetime: in Plaintiff's view, she would "never again need to support herself," and she is entitled to "sufficient financial resources to maintain … properties throughout her lifetime," and "lifelong financial support." Compl. ¶¶ 202, 233, 252. Because Plaintiff alleges that the purported agreement would last "in perpetuity" and through the end of her (or Sid's) life, it is invalid and unenforceable as a matter of law. *See*, *e.g.*, *Almazan v. Almazan*, 2015 WL 500176, at *8 (S.D.N.Y. Feb. 4, 2015); *Harris v. Home Indem. Co.*, 6 A.D.2d 861, 861, 175 N.Y.S.2d 603, 604 (N.Y. App. Div. 1958). A decision by the New York Appellate Division is on-point. In *Yedvarb v. Yedvarb*, 237 A.D.2d 433 (2d Dep't 1997), the Appellate Division held that an oral promise to "always take care of" a plaintiff was invalid because the purported promise "was not capable of performance before the end of the plaintiff's lifetime" and was thus "barred by the statute of frauds." *Id.* at 434. So too here. If Plaintiff intended legally to enforce an agreement to be Sid's "lifelong partner," Compl. ¶ 191, Plaintiff was required to sign the written instrument that New York and other States recognize for that purpose—a marital one.

Separately, "[t]he statute of frauds [also] prohibits the conveyance of real property without a written contract." *Makransky v. Makransky*, 242 A.D.3d 977, 979–80, 245 N.Y.S.3d 99 (N.Y. App. Div. 2025); *see also* N.Y. Gen. Oblig. Law § 5-703(1) ("[A]n estate or interest in real property, other than a lease for a term not exceeding one year … cannot be created … unless by act or operation of law, or by a deed or conveyance in writing."). Plaintiff alleges that the purported contract concerned interests in real property, asserting that Plaintiff is entitled to "share in substantial real property" and that "Sid refused to convey the promised interests in the parties' real property." Compl. ¶¶ 217, 221. Such an oral promise, if ever it even was made, is unenforceable under the Statute of Frauds as a matter of law. *Makransky*, 242 A.D.3d at 979–80.

***Second***, and independently, Plaintiff's allegations regarding the purported oral agreement are too vague and indefinite to make the agreement enforceable (let alone plausible). Even when parties may intend to enter into an agreement, "[a] court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to." *Watkins v. Harlem Ctr. for Nursing & Rehab., LLC*, 2021 WL 4443968, at *7 (S.D.N.Y. Sept. 28, 2021). "[I]f essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result." *Id.* Critically, one essential term is "the consideration to be paid." *Id.* "[A]n agreement must be definite as to compensation." *Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 181 A.D.2d 551, 551, 581 N.Y.S.2d 50, 51 (1992).

Plaintiff fails to allege numerous essential contract terms here. To be sure, Plaintiff asserts that Plaintiff entered into a "valid and express oral agreement, made in New York," and that the "terms" of this agreement purportedly are "unmistakable." Compl. ¶¶ 202, 252.[3] In Plaintiff's

[3] Plaintiff's mere assertion that the contract is "valid and enforceable" is a legal conclusion entitled to no credit on a motion to dismiss. *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

view, "Sid agreed that Oona would never again need to support herself financially, that he would generously provide for her, and that she would share in the property and assets they acquired during their relationship." Compl. ¶ 202. Stated differently, Sid purportedly agreed to provide Plaintiff with "substantial real estate, the financial means to maintain that real estate, and sufficient financial support to preserve her established lifestyle." *Id.* ¶ 203. Yet even taken at face value, those "terms" are indefinite. Plaintiff does not explain what "financial means" means. Plaintiff does not explain what being "generously provid[ed]" for entails. Elsewhere, Plaintiff asserts she is owed "not less than $400 million," *id.* ¶ 222—with no explanation for how, exactly, Plaintiff derived that gobsmacking number. Plaintiff's allegations about the contract's central terms—particularly what she is owed—are hopelessly vague.

Other allegations undermine the notion of a definite oral agreement. Although Plaintiff at first suggests that the oral agreement was formed after lunch at Sid's townhouse in early 2014, *see id.* ¶¶ 19, 202, Plaintiff later admits that the contract may not have formed during this conversation—or any other single conversation—after all. Plaintiff purportedly came to understand only "in the days and weeks that followed" that she had entered into an oral agreement or "partnership." *Id.* ¶ 19. Plaintiff further admits that the parties disagreed about "the terms of their" alleged agreement—Plaintiff claims she sometimes could not attend social engagements with Sid, even though "Sid viewed Oona's participation in their social engagements as part of th[ose] terms." *Id.* ¶ 119. And, confirming that Plaintiff's "oral agreement" is both hopelessly vague and an end-run around longstanding public policy, Plaintiff also asserts that their agreement included an intent to be "bound together in a lifelong partnership," *id.* ¶ 137, or a purported agreement to become Sid's "lifelong partner," *id.* ¶ 191, without explaining how that agreement

could differ from the common-law marriage that New York law has abolished and declared invalid as a matter of law, *see supra* at 7.

In sum, because there is no enforceable or well-pled contract, the tortious interference claim against Althea must be dismissed.

### B. Plaintiff Fails To Allege That Althea Had Knowledge of A Purported Oral Contract.

Separately, Plaintiff has not sufficiently alleged that Althea had knowledge of the purported oral contract. *JPMorgan Chase Bank.*, 710 F. Supp. 3d at 279.

Because tortious interference claims risk liability for breaches of agreements that defendants did not join, courts require "specific allegations" showing knowledge of the agreement underlying each claim. *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279–80. "[G]eneral awareness that the plaintiff did business with third parties is not enough." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 211–12 (W.D.N.Y. 2021). "Even … knowledge that *some* contract existed is insufficient," *id.*; rather, the defendant "must have actual knowledge of the specific contract that is the subject of the claim," *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018). Although Plaintiff need not allege "precise knowledge," she must allege facts showing "some knowledge of the terms and conditions" at issue. *See Corning Inc.*, 546 F. Supp. 3d at 212. This knowledge must be more than "constructive"—it is not enough to plead that a defendant "should have known" of another's agreement. *Gan v. GSUIG Real Est. Member LLC*, 797 F. Supp. 3d 69, 106–08 (E.D.N.Y. 2025). Instead, "[a]ctual knowledge [is] required to sustain a cause of action for tortious interference with a contract." *Id.* at 107.

Courts applying these challenging standards routinely dismiss tortious interference claims where plaintiffs make "conclusory assertion[s] of knowledge," or assert that "[a plaintiff] clearly

knew" without alleging specific facts necessary to show that a defendant had actual knowledge of the agreement at issue. *See*, *e.g.*, *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279–80 (granting dismissal, where plaintiffs did not allege facts showing bank would have been aware of specific contracts with third parties, when it froze their accounts); *see also*, *e.g.*, *Corning Inc.*, 546 F. Supp. 3d at 212; *A.V.E.L.A., Inc.*, 2018 WL 1273343, at *11; *Gan*, 797 F. Supp. 3d at 106–08; *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 201 (E.D.N.Y. 2024) (a "conclusory and speculative allegation is insufficient to plead that [the defendant] had actual knowledge of [the contract], let alone the specific sections allegedly breached …").

Plaintiff makes only conclusory and insufficient assertions of knowledge here. Plaintiff asserts that Althea had "actual knowledge of the existence and essential terms of Oona and Sid's agreement" because she purportedly "knew that Oona and Sid had lived together for nearly a decade as partners; that Oona occupied and managed their homes in New York, Texas, and Colorado," and "that Oona was treated by Sid's employees, family, and friends as his partner who had authority to speak on his behalf." Compl. ¶ 253. These allegations are woefully inadequate—at most they establish "general awareness" of a relationship, not knowledge of any specific contract at issue. *Corning Inc.*, 546 F. Supp. 3d at 211–12.

Plaintiff's assertion that Althea purportedly "knew … that Sid had undertaken substantial continuing financial and property obligations to Oona" similarly is conclusory and deficient. Compl. ¶ 253. As Plaintiff elsewhere admits, Althea "was a stranger to Oona and Sid's [purported] agreement." *Id.* ¶ 255. There is no explanation for *how* or *why* such a "stranger" to the contract necessarily would have known of its purported commitments merely because Plaintiff and Sid pursued an unmarried relationship. *See Gan*, 797 F. Supp. 3d at 106–08 (rejecting "conclusory" assertions of knowledge). In *Gan*, for example, the court addressed allegations that a developer

had interfered with investors' "Operating Agreement" with a management company, reasoning that even though the developer purportedly had "orchestrated the entire arrangement to obtain EB-5 financing for the development of the Project," such allegations at best established only constructive, but not actual, knowledge of the contract. *Id.* at 107–08. Only defendants who had "reviewed the loan documents" and who were "required to conduct due diligence regarding the same" plausibly had actual knowledge. *Id.* at 108. Here, Plaintiff's allegations against Althea are even weaker than those against the developer in *Gan*. Plaintiff does not allege facts showing that Althea had reason to be aware of *any* contract between Sid and Plaintiff, much less *what* contract that was or what its terms were.[4] Plaintiff certainly does not allege the sort of well-pled facts (*e.g.,* reading a loan document) other courts have relied on to infer actual knowledge of any specific agreement at issue. *Id.*

### C. Plaintiff Fails To Allege That Althea Intentionally Procured Any Breach of the Purported Oral Contract.

In addition to failing to plead that Althea had knowledge of a specific agreement, Plaintiff also has not plausibly alleged, as required, that Althea "intentional[ly] procure[d] … the third-party's breach … without justification." *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279.

Plaintiff makes only speculative assertions regarding Althea's role in any purported breach. Discussing Sid's purported breaches, Plaintiff admits that "Sid sent" a purported "maintenance agreement" allegedly walking back promises of an alleged $50 million lump-sum payment, *id.* ¶ 182, that "Sid claimed" liquidity problems prevented payment of that $50 million in a lump-sum rather than over time, *id.* ¶ 187, and that "Sid … inform[ed] [Plaintiff] that what he deemed to be

[4] Even while asserting Althea's purported knowledge, Plaintiff herself is vague as to what the "continuing financial and property obligations" here purportedly were. Compl. ¶ 253. Such assertions do not show Althea actually had at least "some knowledge of the terms and conditions" at issue. *Corning Inc.*, 546 F. Supp. 3d at 212.

her belongings" had been placed into storage, *id.* ¶ 38. Those allegations contain no well-pled facts plausibly explaining Althea's role in this conduct. Plaintiff instead makes only assertions "on information and belief," claiming, *e.g.*, that Althea had "influence" over Sid and "direct[ed]" his alleged breaches. *Id.* ¶¶ 38, 184. These allegations are pure speculation (not to mention false), and do not "nudge [Plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

Even if Althea's marriage somehow caused Sid to breach a purported agreement, that circumstance would not plausibly show that Althea's "objective was to procure … a breach." *Corning Inc.*, 546 F. Supp. 3d at 212. To the contrary, and shorn of conclusory speculation, the few facts Plaintiff alleges at most establish that Althea married the man she loves. *See* Compl. ¶¶ 41, 189. Plaintiff herself asserts that Althea acted to advance her "own personal, romantic, social, and other interests." *Id.* ¶ 255. But there is nothing wrongful about seeking a personal and romantic relationship with someone else. Even if purported breaches were "incident to [that] … lawful purpose," that is "not enough" to sustain a tortious interference claim. *See Corning Inc.*, 546 F. Supp. 3d at 212 (granting dismissal); *Beecher v. Feldstein*, 8 A.D.3d 597, 598 (2d Dep't 2004) (affirming dismissal). In *Beecher*, for example, the New York Appellate Division held that even where acquisition of a business caused a breach of a lease—and even where the acquirer *knew* of that lease—that did not show that the acquirer "*intentionally procure[d]*" the breach. *Id.* (emphasis added). So too here, Althea cannot be said to have "intentionally procured" the end of Ms. Sperr's relationship, even if that ending might have been incidental to Althea's lawful purpose in dating her longtime friend.

Relatedly, the intent element further is lacking because Plaintiff fails to allege facts showing Althea was "without justification" in dating and marrying Sid. "[P]rocuring the breach of

a contract in the exercise of an equal or superior right is acting with just cause or excuse, and is justification for what would otherwise be an actionable wrong." *Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 687 (1969) (citation omitted); *accord Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996). "The right to marry is a fundamental right inherent in the liberty of the person." *Obergefell v. Hodges*, 576 U.S. 644 (2015). Here, the Complaint admits that Sid was unmarried when he began to date Althea, and Althea did not interfere in any marital relationship recognized by the State of New York when she accepted Sid's invitation to travel to Colorado and deepen her love for him. Because Althea did nothing more than exercise her own right to seek happiness with and eventually marry her longtime friend, Plaintiff cannot plausibly allege she acted "without justification" as is required to show intentional interference with a contractual relationship.

## II. PLAINTIFF FAILS TO ALLEGE A "CONSTRUCTIVE TRUST" CLAIM AGAINST ALTHEA BASS (COUNT V).

Separately, Plaintiff does not allege a valid cause of action for "constructive trust" against Althea under any relevant State law. Before addressing the merits of this claim, the Court first should address the applicable choice of law. "Under New York's choice of law rules, the state with the greatest interest in applying its laws to a constructive trust is the state where the property is located." *See DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *7–8 (S.D.N.Y. Mar. 1, 2023) ("the law of the situs of the property governs such claims"). Plaintiff does not specify what property supplies the basis of a constructive trust claim against Althea (a separate basis for dismissal, *see infra* Part II.A); instead, the claim rests on interests in unspecified "real property, cash, securities, art, valuable personal property, and other assets." Compl. ¶ 246. Elsewhere in the Complaint, however, Plaintiff asserts that she and Sid shared property in New York, Colorado, and Texas, *see id*. ¶¶ 5, 21–22, 88, 100, 233, suggesting that the laws of all three States could govern different portions of Plaintiff's claim.

The Court should dismiss Count V in its entirety because the claim fails under the laws of all three of New York, Colorado, and Texas.

### A. Plaintiff Does Not State A Claim For Constructive Trust Under New York Law.

Plaintiff fails to allege a claim for constructive trust under New York law. As a preliminary matter, it is an "open question" whether constructive trust is even an independent claim in New York. *See DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *7–8 (S.D.N.Y. Mar. 1, 2023).[5] Assuming *arguendo* that New York permits "constructive trust" claims, the "usual elements . . . are (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Makransky*, 242 A.D.3d at 981.

Plaintiff alleges none of these elements against Althea, so the Court should dismiss Count V as to any property located in New York.

***First***, Plaintiff's "failure to allege a confidential or fiduciary relationship with [Althea] is fatal to its claim for a constructive trust." *Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506, 507–08 (S.D.N.Y. 2011) (granting dismissal); *see also Transition Invs., Inc. v. Allen O. Dragge, Jr. Fam. Tr.*, 2011 WL 5865149, at *9 (S.D.N.Y. Nov. 21, 2011) (denying leave to amend as futile, where amended complaint failed to allege a confidential or fiduciary relationship). "To plead the existence of such a relationship, courts require allegations suggesting one party reposing confidence and trust in the other." *In re Genger*, 2021 WL 3574034, at *21–22 (Bankr. S.D.N.Y. Aug. 12, 2021) (quotations omitted). Even familial relationships, standing alone, are inadequate to support constructive trust claims. *Id.*; *see also Almazan*, 2015 WL 500176, at *12.

[5] The Appellate Division recently treated constructive trust as an independent claim, albeit while affirming dismissal for other reasons. *See Makransky*, 242 A.D.3d at 981.

The required confidential relationship must be with the specific defendant at issue. In *Makransky*, for example, a plaintiff claimed interests in property previously belonging to her husband's mother, and brought claims against both the mother and certain non-familial buyers. *Makransky*, 242 A.D.3d at 977–78. Addressing a constructive trust claim against the buyers, the Appellate Division affirmed dismissal because, *inter alia*, "the plaintiff failed to plead the existence of a confidential or fiduciary relationship between herself and the buyers." *Id.* (emphasis added); *see also Friesel v. Bank of Am., N.A.*, 2025 WL 1224831, at *3 (S.D.N.Y. Apr. 24, 2025) ("In the instant action, Plaintiff's constructive trust claim must fail due to the lack of a confidential or fiduciary relationship with the Defendants"); *Atateks*, 798 F. Supp. 2d at 507 (assessing whether the plaintiff had alleged "a confidential or fiduciary relationship with Dente").

Plaintiff alleges no facts establishing a confidential or fiduciary relationship between herself and Althea here. Plaintiff does not claim to have reposed trust and confidence in Althea. To the extent Plaintiff alleges anything about her relationship with Althea, those allegations suggest she did *not* know her—Althea's relationship with Sid, for example, purportedly was "unbeknownst" to Plaintiff. Compl. ¶ 7.

***Second***, Plaintiff further fails to allege a "promise" for purposes of a constructive trust, for much the same reason that Plaintiff fails to allege a definite oral contract. *See* Part I.A, *supra*. "[I]n order to sustain a constructive trust involving real property, the promise ha[s] to be 'clear and unequivocal.'" *McKeown v. Frederick*, 39 Misc. 3d 1241(A), 975 N.Y.S.2d 367 (Sup. Ct. 2013) (quoting *Rock v. Rock*, 100 A.D.3d 614, 616, 953 N.Y.S.2d 165 (2d Dep't 2012)). Plaintiff's vague allegations establish no clear and unequivocal promise in this case; indeed, Plaintiff's constructive trust claim does not even allege what specific property Plaintiff believes she is entitled to. Plaintiff excuses this omission on the theory that the location of the property is "peculiarly within

Defendant's knowledge." Compl. ¶ 246. Even so, that does not explain why Plaintiff fails to specify what property was promised or what property might potentially be at issue.

***Third***, Plaintiff further fails to allege a "transfer in reliance" on a promise. *Makransky*, 242 A.D.3d at 981. "In order to establish that there was a transfer in reliance on [a] promise, it must be shown that the party seeking to impose the constructive trust had some interest in the property prior to obtaining the promise that the property would be conveyed, and that this interest was parted with in reliance on the promise." *Id.* (quotations omitted). "[N]o constructive trust will be imposed by one who has no interest in the property prior to obtaining a promise that such an interest will be given to him [or her]." *Id.* This element, too, shows why Plaintiff's allegations are a poor fit for a constructive trust claim. Plaintiff does not allege that she herself transferred any property, or that she had any rights in that property, "prior to" the purported promises made between Sid and herself.

***Fourth***, Plaintiff fails to allege unjust enrichment under New York law. Plaintiff does not plausibly allege that Althea has been "enriched," or that any property was transferred to Althea at all.

Even if Plaintiff had alleged transfers to Althea, Plaintiff has not plausibly pled that any transfers were "unjust." Although Plaintiff attempts to plead around this obstacle, the problem remains: New York has abolished common-law marriage. *See supra* at 7. As a matter of public policy, New York rejects—and in fact, is wary of extortive lawsuits regarding—exactly the sort of unmarried "lifelong partnership," Compl. ¶ 137, Plaintiff asserts here. Faced with that public policy barrier, Plaintiff cannot plausibly allege that Sid acted unjustly by ending his unmarried relationship with Plaintiff and transferring assets between himself and his new lawfully wedded spouse. Far from inequitable, this result flows directly from the marital choices Plaintiff and Sid

made. If Plaintiff and Sid wanted the law to recognize their purported "lifelong partnership" or for the law to infer "injustice" in the absence of community property to Plaintiff following the end of that relationship, then Plaintiff and Sid could have gotten married. Having declined or failed to do so, Plaintiff cannot assert injustice in Sid starting a new chapter in his life and sharing property with Althea, his decades-long friend—and now his spouse.

**B. Plaintiff Does Not State A Claim For Constructive Trust Under Colorado or Texas Law.**

Finally, Plaintiff fails to allege constructive trust claims under Colorado or Texas law for the additional reason that neither state recognizes constructive trust claims. Under Colorado law, for example, "to the extent that Plaintiffs seek relief pursuant to claims for constructive trust and equitable lien, such legal theories do not constitute a separate causes of action; rather, they are legal forms of equitable remedy." *Morally v. Marabella Partners, LLC*, 2006 WL 2038388, at *8 (D. Colo. July 19, 2006); *see also id.* (dismissing constructive trust claim as a "legal theor[y] not cognizable as a matter of law"); *Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, 2021 WL 877716, at *10 (D. Colo. Mar. 9, 2021) (dismissing declaratory judgment claim seeking constructive trust "because, while they are pled as claims seeking declaratory judgments, in actuality they assert legal theories not cognizable as a matter of law" (quotations omitted)).

Similarly, "[a] constructive trust is not a cause of action under Texas law." *Roach v. Berland*, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014). "Because it is a remedy," and "not an independent cause of action … one seeking it first must have a cause of action warranting its imposition." *Beverly Found. v. W.W. Lynch*, 301 S.W.3d 734, 736 (Tex. App. 2009). Plaintiff does not allege any viable cause of action against Althea here.

Plaintiff further does not allege facts supporting even a constructive trust remedy under Colorado or Texas law. To establish a right to a constructive trust remedy under Colorado law, a

party must not only "establish[] a cause of action under one of the substantive provisions of unjust-enrichment law," but also must "show that the transaction that is the source of the liability is one in which the defendant acquired [the] *specifically identifiable property* upon which the constructive trust is to be imposed." *McAnulty v. Standard Ins. Co.*, 81 F.4th 1091, 1099 (10th Cir. 2023) (emphasis in original, quotations omitted). Plaintiff does not allege any "specifically identifiable property" for a constructive trust. *See* Part II.A, *supra*. And in Texas, to establish a right to a constructive trust remedy, a plaintiff similarly must "prove (1) breach of a special trust, fiduciary relationship, or actual fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res." *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App. 2004). For the reasons explained above, Plaintiff does not allege the required relationship or the "identifiable res" here.

Because Plaintiff fails to plead a valid cause of action for constructive trust over any identifiable property under the law of any relevant State, Count V should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Defendant Althea Irene Viafora Bass with prejudice.

Respectfully submitted,

Dated: October 8, 2026

**PAUL HASTINGS LLP**

By: */s/ Avi Weitzman*
Avi Weitzman
Elise Eckert
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6920
aviweitzman@paulhastings.com
eliseeckert@paulhastings.com

Joseph Schroeder (*pro hac vice forthcoming*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(205) 551-1979
josephschroeder@paulhastings.com

*Attorneys for Defendant Althea Irene Viafora Bass*

**WORD COUNT CERTIFICATION**

I, Avi Weitzman, an attorney admitted to practice before this Court and a member of Paul Hastings LLP, counsel for Defendant Althea Irene Viafora Bass, certify under Local Civil Rule 7.1(c) of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York the following. Defendant Althea Irene Viafora Bass's Memorandum in Support of Motion to Dismiss contains 7,140 words. That count excludes the caption, any index, table of contents, table of authorities, signature block, and this certificate. It was calculated with the word-count feature of the word-processing program used to prepare the memorandum, Microsoft Word. The memorandum therefore complies with the word-count limit in Local Civil Rule 7.1(c).

Dated: October 8, 2026

**PAUL HASTINGS LLP**

By: */s/ Avi Weitzman*
Avi Weitzman