# EXHIBIT 1

# MAINTENANCE AGREEMENT

The parties to this Maintenance Agreement (this "Agreement") are **Sid R. Bass** ("SRB") and **Oona O. Sperr** ("OOS"). SRB and OOS are sometimes herein collectively referred to as the "parties" and each, a "party." In their capacity as a party receiving Confidential Information (as defined below), a party may be referred to herein as a "Receiving Party"; in their capacity as a party disclosing Confidential Information, a party may be referred to herein as a "Disclosing Party."

In consideration of the mutual undertakings and obligations contained in this Agreement, the parties agree as follows:

## ARTICLE 1

The parties stipulate and agree to the following facts:

**1.1 Existence of Relationship.** The parties have been in a consensual mutual non-marital relationship, but are terminating this relationship as provided in this Agreement. The parties acknowledge and represent that:

(a) They have not at any time entered into an agreement that they are husband and wife and they are not in fact husband and wife;

(b) They did not, and do not, intend to marry, either ceremoniously or informally;

(c) They have not at any time represented or held themselves out in any manner to indicate that they are husband and wife and will not at any time represent or hold themselves out in any manner to indicate that they are husband and wife;

(d) They did not, and do not, intend at any time for their relationship to in any way be construed as a "common-law" or informal marriage;

(e) They did not, and do not, intend for their relationship to in any way be governed by the provisions of the Texas Family Code; and

(f) They have not at any time entered into a written agreement described in Section 26.01(b)(3) of the Texas Business and Commerce Code governing a nonmarital conjugal cohabitation relationship.

**1.2 Division of Property.** The parties have carefully considered (a) the nature and extent of the properties owned, directly or indirectly, by each of them prior to the commencement of their relationship, (b) the properties that each of them has acquired during their relationship, (c) their respective future needs for support, and (d) other factors. The parties believe the maintenance and other terms of the parties contained in this Agreement are in a manner that is fair, just and right, giving due regard for the rights of each party of the relationship.

## ARTICLE 2
## CHILDREN

There were no children born to, or adopted by, the parties, and none are expected.

## ARTICLE 3
## PROPERTY SETTLEMENT AGREEMENT

**3.1 Purpose.** The purpose of this Agreement is to (a) settle forever and completely the rights and claims of the parties in and to all property, assets, debts and obligations as between themselves, their heirs, agents, executors, administrators, personal representatives, trustees, successors and assigns and (b) provide for certain maintenance of OOS during her lifetime. All real and personal property recognized as belonging to SRB (whether owned directly or indirectly by him in his individual name or by him as trustee of any revocable trust established by SRB for his benefit) under this Agreement has been, and shall continue to be, SRB's sole and separate property, and all real and personal property recognized as belonging to OOS under this Agreement has been, and shall continue to be, OOS's sole and separate property. The real property of each party is set forth on the attached **Schedule I**. The parties agree that any real property held prior to the Effective Date (defined below) in the individual name of a party or a trustee for the benefit of a party and excluded from the attached **Schedule I** shall be presumed to be the sole and separate real property of that party. Except as otherwise provided in this Agreement, a party shall not have any interest in any real property recognized as belonging to the other party under this Agreement.

**3.2 New York Properties.** (a) OOS is currently occupying the property located at 157 East 70th Street, New York, New York (the "Temporary Residence"), the record owner of which is Kaserb, LLC ("Kaserb"), a Delaware limited liability company that is owned directly or indirectly by SRB or the trustee of a trust created by SRB for SRB's benefit. Upon execution of this Agreement by OOS, OOS and Kaserb shall execute and deliver a residential lease (the "Temporary Residence Lease") in the form attached hereto as **Exhibit A** and covering the Temporary Residence. The Temporary Residence Lease provides for a lease term ending no later than December 31, 2025, with no right or option for such lease term to be extended. If OOS has not vacated and removed all of her property from the Temporary Residence by December 31, 2025, OOS shall pay the following amount (the "Holdover Charge") for each month (or portion thereof) of OOS holding over in the Temporary Residence after December 31, 2025:

| Monthly Holdover Charge | Months of Holdover |
|---|---|
| $150,000 | 1-3 |
| $250,000 | 4-6 |
| $300,000 | 7-9 |
| $375,000 | 10 or more |

All Holdover Charges shall be paid by deducting such Holdover Charges from the Annual Maintenance Payments (defined below).

(b) The property located at 152 East 71st Street, New York, New York (the "Lifetime Residence"), the record owner of which is Norkor, LLC ("Norkor"), a Delaware limited liability company that is owned directly or indirectly by SRB or the trustee of a trust created by SRB for

SRB's benefit, is presently being renovated under the direction of OOS. SRB will bear the cost of such renovations (not exceeding Seven Hundred Fifty Thousand Dollars ($750,000.00) in the aggregate) payable after the Effective Date. OOS agrees to use her best efforts to have all such renovations substantially completed by not later than December 31, 2025, so that she can vacate the Temporary Residence and reside at the Lifetime Residence by not later than December 31, 2025.

Upon execution of this Agreement by OOS, OOS and Norkor shall execute and deliver a residential lease (the "Lifetime Residence Lease") in the form attached hereto as **Exhibit B** and covering the Lifetime Residence. The Lifetime Residence Lease provides that OOS's obligation to pay certain amounts will not begin until the earlier to occur (the "Commencement Date") of (a) December 31, 2025, and (b) the date on which OOS first occupies the Lifetime Residence, and from and after the Commencement Date, OOS shall be obligated to pay all costs and expenses related to ownership of the Lifetime Residence including, but not limited to, repair and maintenance expenditures, utilities, ad valorem taxes, property insurance and other such items. Prior to the Commencement Date, Norkor will be obligated to pay for all costs and expenses related to ownership of the Lifetime Residence. All such costs and expenses payable by OOS under the Lifetime Residence Lease which are paid directly by SRB or Norkor shall be reimbursed by OOS by deducting the amounts from the Annual Maintenance Payments.

**3.3 Security.** While OOS is residing at the Temporary Residence and, thereafter, at the Lifetime Residence, SRB will cause, at SRB's cost, such properties to have security (such as door access, alarms, cameras and monitoring) provided by a security provider acceptable to SRB.

**3.4 Non-Real Property Assets.** Except as described on **Schedule II** to this Agreement, all furniture, furnishings, equipment, household contents, works of art, and other personal property, whether in the Temporary Residence, the Lifetime Residence, or any other real property owned directly or indirectly by SRB or the trustee of a trust created by SRB for SRB's benefit, are the sole and separate property of SRB.

**3.5 Credit Cards.** OOS currently possesses a credit card with the last four digits of 9559 issued on the credit of SRB. OOS may continue to use such credit card until December 31, 2025, as long as the cumulative amount charged to such card after the Effective Date does not exceed Two Hundred Fifty Thousand Dollars ($250,000.00). OOS shall surrender such card by not later than December 31, 2025.

**3.6 Annual Maintenance Payments.** SRB will pay OOS an annual maintenance payment (collectively, the "Annual Maintenance Payments") in the amount of Five Million Dollars ($5,000,000.00) per year for a total of ten (10) consecutive years, beginning by not later than ten (10) business days after the Effective Date and continuing annually thereafter on each anniversary of the Effective Date; provided, however, the Annual Maintenance Payment to be paid on February 1, 2034 shall be paid in two (2) installments, the first installment of which will be in the amount of Four Million Dollars ($4,000,000.00) and will be paid on February 1, 2034 and the second installment of which will be in the amount of One Million Dollars ($1,000,000.00) and will be paid by not later than January 30, 2035.

**3.7 Other Services.** SRB will cause accounting, tax and other similar services as those provided to OOS prior to the Effective Date to be made available to OOS through December 31, 2025 (including the preparation and filing of 2025 tax returns). Thereafter, such services shall be transitioned to one or more third-party service providers to be selected by OOS.

**3.8 Portia Sperr Expenses.** (a) From and after the Effective Date of this Agreement, OOS shall be obligated to pay all non-security costs and expenses related to Portia Sperr's support and care as well as all costs related to Portia Sperr's ownership of her residence located at 2038 Spruce Street, Philadelphia, Pennsylvania. Any such costs and expenses payable by OOS which are paid directly by SRB shall be reimbursed by OOS by deducting the amounts from the Annual Maintenance Payments.

(b) SRB will cause, at SRB's cost, Portia Sperr to be provided with security services (door access, alarms, monitoring and a 24/7 staffed security post) for the remainder of her life with such services to be provided by a security provider acceptable to SRB.

**3.9 Transferability.** The beneficial interests provided by, and the covenants and other obligations hereunder of, SRB, Norkor and Kaserb described in this Agreement or under any instrument or document executed pursuant to this Agreement, are personal and exclusive to OOS and are not assignable or transferable by OOS. OOS is expressly prohibited from renting, leasing or licensing the use of the Temporary Residence or the Lifetime Residence.

**3.10 Fulfillment of Duties, Obligations and Responsibilities.** In this Agreement, certain duties, obligations and responsibilities are imposed on SRB and certain duties, obligations and responsibilities are imposed on OOS. Both SRB and OOS shall take such necessary action to cause such duties, obligations and responsibilities to be performed whether such duties, obligations and responsibilities must be performed directly or indirectly.

## ARTICLE 4
## RELEASES AND WAIVERS

**4.1 Release of Claims.** The parties expressly release and relinquish, each to the other, every claim, including, without limitation, claims for intentional or willful torts, demand, right and interest that he or she may have against the other or the other's estate, as well as any income or earnings from those claims, which arise from their relationship. The parties expressly acknowledge that those benefits set forth in this Agreement are the only benefits the parties are receiving or are entitled to receive upon the termination of their relationship.

**4.2 Release of Rights in Estates and Trust Estates.** Each party shall be free to dispose of his or her assets at death as he or she shall determine by way of his or her will, revocable living trust agreement, beneficiary designation or otherwise. Each of the parties releases all rights either may have or acquire to share in the estate of the other or to act in any manner in the administration of the estate of the other. OOS also releases all rights she may have or acquire in the trust estates of the Sid R. Bass Management Trust, a Texas trust created by SRB, and the SRB Management Trust, a Texas trust created by SRB.

## ARTICLE 5
## ATTORNEY'S FEES

**5.1 Enforcement Expenses.** Each party shall be solely responsible for the payment of his or her legal fees and other costs incurred in enforcing any provision of this Agreement. Each party acknowledges that he or she had the opportunity to retain separate legal counsel to advise him or her with respect to this Agreement and to assist him or her in the negotiation of this Agreement. The Parties further acknowledge that Kelly Hart & Hallman LLP represented SRB in the preparation of this Agreement and did not represent OOS.

## ARTICLE 6
## CONFIDENTIALITY PROVISIONS

**6.1 Confidential Information.** In connection with the parties' past, present and future interpersonal and business relationships (collectively, the "Relationship"), each party has acquired or will acquire certain confidential information and other knowledge not generally known to the public, including, but not limited to, information concerning the properties (both real and personal), family (including children, grandchildren, parents, brothers, sisters, nephews and nieces, and spouses and offspring of any of the foregoing), employees, advisors, friends, acquaintances, personal finances, businesses, and any other confidential information acquired by the Receiving Party from or about the Disclosing Party or as a consequence of the Relationship, together with all notes, records, recordings and other documents (including, but not limited to, documents in an electronic format) containing such information or based thereon (herein collectively called the "Confidential Information"). The Receiving Party agrees to treat the Confidential Information in accordance with the provisions of this Agreement and to take or abstain from taking certain other actions hereinafter set forth.

**6.2 Excluded Information.** The Confidential Information shall not include information that is or becomes publicly available other than as a result of (a) acts by the Receiving Party or their Representatives (defined below) in breach of the terms of this Agreement or (b) acts by any other person or entity in violation of any confidentiality agreement applicable to such person or entity.

**6.3 Non-Disclosure of Confidential Information.** The Receiving Party shall keep the Confidential Information confidential and shall not disclose any of the Confidential Information in any manner whatsoever; provided, however, that (i) the Receiving Party may make any disclosure of information contained in the Confidential Information provided to them by or on behalf of the Disclosing Party to which the Disclosing Party gives their prior written consent, and (ii) any information contained in the Confidential Information provided by or on behalf of the Disclosing Party may be disclosed to the Receiving Party's attorneys or accountants ("Representatives") who need to know such information in connection with this Agreement and who are directed by the Receiving Party to keep such information confidential. Each party shall be responsible for any breach of the terms of this Agreement by any of their Representatives.

**6.4 Non-Disclosure of Existence of Discussions.** Without the prior written consent of the other party, or except as a party is advised by counsel is required by applicable law, regulation



4105766

or legal process, neither party nor any of their Representatives shall disclose to any other person that they have received Confidential Information.

**6.5 Required Disclosure.** In the event that a party or anyone to whom they disclose the Confidential Information receives a request to disclose all or any part of the Confidential Information provided to them by applicable law or regulation or under the terms of a subpoena or other order issued by a court of competent jurisdiction or by another governmental agency, such party shall (provided that such is legally permitted) (i) promptly notify the Disclosing Party of the existence, terms and circumstances surrounding such a request, (ii) consult with the Disclosing Party on the advisability of taking steps to resist or narrow such request, (iii) if disclosure of such Confidential Information is required, furnish only such portion of the Confidential Information as such party is advised by counsel is legally required to be disclosed, and (iv) reasonably cooperate with the Disclosing Party in their efforts to obtain an order or other reliable assurance that confidential treatment will be afforded to such portion of the Confidential Information that is required to be disclosed.

## ARTICLE 7
## GENERAL PROVISIONS

**7.1 No Waiver.** No waiver of any of the terms of this Agreement shall be valid unless in writing and signed by both parties. No waiver of default of any term of this Agreement shall be deemed a waiver of any subsequent default of the same or similar nature.

**7.2 Governing Law.** This Agreement shall be construed and enforced in accordance with the laws of the State of Texas.

**7.3 Venue of Suits.** Any proceeding to enforce this Agreement shall be brought in a court of competent jurisdiction located in Tarrant County, Texas.

**7.4 Use of Pronoun.** A masculine pronoun, as indicated by its immediate context, may include the feminine or neuter genders or both.

**7.5 Entire Agreement.** Each party acknowledges that he or she has carefully read this Agreement; that he or she has executed it in reliance on the party's own judgment; and that this Agreement expresses the entire agreement between the parties concerning the subjects it purports to cover and supersedes all prior agreements between the parties concerning such subjects. There are no existing agreements, understandings or other arrangements, either oral or written, between the parties which are not fully expressed in or integrated into this Agreement. Further, no representations not included in this Agreement have been made to or relied upon by either party.

**7.6 Execution of Transfer Instruments.** Each of the parties shall execute and deliver, or cause to be executed and delivered, to the other party any other documents and do or cause to be done any other acts and things as may be necessary or desirable to fully effectuate the provisions and purposes of this Agreement, including, but not limited to, those documents attached hereto.

**7.7 Partial Invalidity.** If any provision of this Agreement or any document executed pursuant to this Agreement is or may be held by a court of competent jurisdiction to be invalid,

void or unenforceable, the remaining provisions shall nevertheless survive and continue in full force and effect without being impaired or invalidated in any way.

**7.8 Multiple Counterparts.** This Agreement may be executed in multiple original counterparts, all comprising one agreement.

**7.9 Amendment or Modifications.** This Agreement may be amended or modified only by a written instrument signed by both parties.

**7.10 Titles, Headings and Captions.** All titles, headings and captions used in this Agreement are for administrative convenience only. Any conflict between the headings and text shall be resolved in favor of the text.

**7.11 Enforcement.** An enforcement action may be commenced by one party against the other party only if the other party fails to perform a duty, obligation or responsibility under this Agreement and such failure continues more than thirty (30) days after written notice of such failure to the other party.

## ARTICLE 8
## EFFECT OF AGREEMENT

**8.1 Effective Date.** This Agreement shall take effect on February 1, 2025 (the "Effective Date").

***[Remainder of page intentionally left blank]***

EXECUTED by each party in multiple originals on the respective date indicated below.

________________________________________

Sid R. Bass

Date Executed: ____________________________

________________________________________

Oona O. Sperr

Date Executed: ____________________________

**SCHEDULE I**
**TO**
**MAINTENANCE AGREEMENT**

1. Real property belonging to OOS are at the following address(es):

2. Real property belonging to SRB are at the following address(es):

| Address | County |
|---|---|
| 4824 Crestline Road, Fort Worth, TX 76107 | Tarrant |
| 4741 Crestline Road, Fort Worth, TX 76107 | Tarrant |
| 1503 Rivercrest Court, Fort Worth, TX 76107 | Tarrant |
| 4829 Crestline Road, Fort Worth, TX 76107 | Tarrant |
| 2600 W 7th Street, #2704, Fort Worth, TX 76107 | Tarrant |
| 2601 W 7th Street, #2706, Fort Worth, TX 76107 | Tarrant |
| 2602 W 7th Street, #2708, Fort Worth, TX 76107 | Tarrant |
| | |
| 144 Columbus Ave., Unit 7D, New York, NY 10023 | New York |
| 14 East 94th St., New York, NY 10128 | New York |
| 157 East 70th St., New York, NY 10021 | New York |
| 101 West 67th St., Apt. 51G, New York, NY 10023 | New York |
| 152 East 71st St., New York, NY 10021 | New York |
| 4 East 66th Street (9th Floor), New York, NY 10021 | New York |
| 4 East 66th Street (Unit 1F), New York, NY 10021 | New York |
| | |
| Alpine Cascade Ranch, 6,283.23 Acres, Pagosa Springs, CO | Archuleta |
| 4454 County Road 500, Pagosa Springs, CO 81147 | Archuleta |
| 2345 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| 2409 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| 2446 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| 2465 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| 2504 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| 2529 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| 2657 S. Pagosa Blvd., Pagosa Springs, CO 81147 | Archuleta |
| | |
| 182 E. Reds Road, Aspen, CO 81611 | Pitkin |
| 220 E. Reds Road, Aspen, CO 81611 | Pitkin |
| | |
| 254 Deer Run, Carbondale, CO 81623 | Eagle |

**SCHEDULE II**
**TO**
**MAINTENANCE AGREEMENT**

The following non-real estate assets belonging to OOS as her sole and separate property:

> All clothing and other personal effects in her possession or subject to her control, and all consumables and supplies at OOS's Temporary Residence, together with the following:
>
> All of OOS's clothing and other personal effects wherever located in Fort Worth, Texas

# EXHIBIT A

## TEMPORARY RESIDENCE LEASE

[To be attached]

**EXHIBIT B**

**LIFETIME RESIDENCE LEASE**

[To be attached]

# EXHIBIT A

# TEMPORARY RESIDENTIAL LEASE

1. PARTIES: The parties to this Lease are **Kaserb, LLC** ("Landlord") and **Oona O. Sperr** ("Tenant").

2. LEASE: Landlord leases to Tenant the property located at 157 East 70th Street, New York, New York (the "Property").

3. TERM: The term of this Lease commences on the earlier of (a) the date that Tenant occupies the Property or (b) February 1, 2025 and terminates (unless terminated earlier by reason of other provisions) on the earlier of (x) December 31, 2025, or (y) when Tenant has permanently vacated the Property by removing all property owned by her.

4. USE OF PROPERTY: Tenant may use the Property only for her personal residential purposes. Tenant may not assign this Lease or sublet any part of the Property.

5. CONDITION OF PROPERTY: Tenant accepts the Property in the condition and state of repair that exists at the commencement of this Lease. Upon termination, Tenant shall surrender the Property to Landlord in not less than the same condition it was in at the commencement of this Lease, except normal wear and tear and any casualty loss.

6. ALTERATIONS: Tenant may not alter the Property or install improvements or fixtures without the prior written consent of the Landlord. Any improvements or fixtures placed on the Property during the term of this Lease will become the property of Landlord.

7. INSPECTIONS: Landlord may, after prior notice, enter at reasonable times to inspect the Property.

8. LAWS: Tenant shall comply with all applicable laws, restrictions, ordinances, rules and regulations with respect to the Property.

9. REPAIRS AND MAINTENANCE: Tenant shall promptly repair at Tenant's expense any damage to the Property caused directly or indirectly by any act or omission of the Tenant or any person other than the Landlord, Landlord's agents or invitees.

10. INDEMNITY: Tenant indemnifies Landlord and Landlord's owners from the claims of all third parties for injury or damage to the person or property of such third party arising from the use or occupancy of the Property by Tenant. This indemnification includes attorney's fees, costs and expenses incurred by Landlord.

11. INSURANCE: Landlord and Tenant shall each maintain such insurance on the contents and Property as Landlord may deem appropriate.

12. DEFAULT: If Tenant fails to perform or observe any provision of this Lease and such failure continues more than thirty (30) days after written notice to Tenant of such failure, Tenant will be in default.

13. TERMINATION: This Lease terminates upon expiration of the term specified in Paragraph 3 or thirty (30) calendar days after Tenant's default under this Lease.

14. HOLDING OVER: Tenant shall surrender possession of the Property to Landlord upon termination of this Lease. Any possession by Tenant after termination creates a tenancy at sufferance and will not operate to renew or extend this Lease. Tenant shall pay the "Holdover Charge" as specified in the Maintenance Agreement between Tenant and the owner of Landlord during the period of any possession after termination as damages, in addition to any other remedies to which Landlord is entitled.

15. ATTORNEY'S FEES: The prevailing party in any legal proceeding brought under or with respect to this Lease is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

16. NOTICES: All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Landlord: Kaserb LLC
c/o Thomas W. White
201 Main Street, Suite 2600
Fort Worth, Texas 76102
Telephone: (817) 338-2022
Facsimile: (817) 390-8739
E-mail: twhite@bass-net.com

To Tenant: ______________________________
______________________________
______________________________
Telephone: ____________________
Facsimile: ____________________
E-mail: ______________________

**LANDLORD:**

**KASERB LLC**

By: ______________________________
Name: ______________________________
Title: ______________________________

**TENANT:**

________________________________________

**Oona O. Sperr**

## EXHIBIT B

## LIFETIME RESIDENTIAL LEASE

1. PARTIES: The parties to this Lease are **Norkor, LLC** ("Landlord") and **Oona O. Sperr** ("Tenant").

2. LEASE: Landlord leases to Tenant the property located at 152 East 71st Street, New York, New York (the "Property").

3. TERM: The term of this Lease commences on the earlier to occur of (a) December 31, 2025, or (b) the date on which Tenant first occupies the Property (the "Commencement Date") and terminates (unless terminated earlier by reason of other provisions) on the earlier of (x) Tenant's death or (y) a date mutually acceptable to Landlord and Tenant.

4. UTILITIES AND OTHER COSTS: From and after the Commencement Date, Tenant shall pay or reimburse Landlord for all costs and expenses related to ownership of the Property including, but not limited to, repair and maintenance expenditures, utilities, ad valorem taxes, property insurance and other such items. All costs and expenses for which Tenant is responsible but which are paid directly by Landlord or Landlord's owner shall be reimbursed by OOS by deducting the amounts of such costs and expenses from the Annual Maintenance Payments under the Maintenance Agreement between Tenant and the owner of Landlord.

5. USE OF PROPERTY: Tenant may use the Property only for her personal residential purposes. Tenant may not assign this Lease or sublet any part of the Property.

6. CONDITION OF PROPERTY: Tenant accepts the Property in the condition and state of repair that will exist on the Commencement Date. Upon termination, Tenant shall surrender the Property to Landlord in not less than the same condition it was in on the Commencement Date, except normal wear and tear and any casualty loss.

7. ALTERATIONS: Any improvements or fixtures placed on the Property will become the property of Landlord.

8. INSPECTIONS: Landlord may, after prior notice, enter at reasonable times to inspect the Property.

9. LAWS: Tenant shall comply with all applicable laws, restrictions, ordinances, rules and regulations with respect to the Property.

10. REPAIRS AND MAINTENANCE: Tenant shall keep the Property repaired and maintained in not less than the same condition it was on the Commencement Date, except normal wear and tear.

11. INDEMNITY: Tenant indemnifies Landlord and Landlord's owners from the claims of all third parties for injury or damage to the person or property of such third party arising from the use or occupancy of the Property by Tenant. This indemnification includes attorney's fees, costs and expenses incurred by Landlord.

12. INSURANCE: Landlord and Tenant shall each maintain such insurance on the contents and Property as Landlord may deem appropriate.

13. DEFAULT: If Tenant fails to perform or observe any provision of this Lease and such failure continues more than thirty (30) days after written notice to Tenant of such failure, Tenant will be in default.

14. TERMINATION: This Lease terminates upon expiration of the term specified in Paragraph 3 or thirty (30) calendar days after Tenant's default under this Lease.

15. HOLDING OVER: Tenant shall surrender possession of the Property upon termination of this Lease. Any possession by Tenant after termination creates a tenancy at sufferance and will not operate to renew or extend this Lease.

16. ATTORNEY'S FEES: The prevailing party in any legal proceeding brought under or with respect to this Lease is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

17. NOTICES: All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Landlord:
Norkor, LLC
c/o Thomas W. White
201 Main Street, Suite 2600
Fort Worth, Texas 76102
Telephone: (817) 338-2022
Facsimile: (817) 390-8739
E-mail: twhite@bass-net.com

To Tenant:
______________________________
______________________________
______________________________
Telephone: ____________________
Facsimile: ____________________
E-mail: ______________________

**LANDLORD:**

**NORKOR, LLC**

By: ________________________________
Name: ______________________________
Title: _______________________________

**TENANT:**

______________________________

**Oona O. Sperr**