**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

OONA O. SPERR,

Plaintiff,

v.

SID R. BASS and ALTHEA I VIAFORA BASS,

Defendants.

Civil Action No. 1:26-CV-07440

**DEFENDANT ALTHEA I VIAFORA BASS'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**......1
**BACKGROUND**......3
**LEGAL STANDARD**......5
**ARGUMENT**......6
I. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW......7
A. PLAINTIFF FAILS TO ALLEGE TORTIOUS INTERFERENCE WITH THE "2014 AGREEMENT" BETWEEN PLAINTIFF AND MR. BASS (COUNT X)......8
1. PLAINTIFF FAILS TO ALLEGE MRS. BASS HAD ACTUAL KNOWLEDGE OF THE ORAL 2014 AGREEMENT......9
2. PLAINTIFF FAILS TO ALLEGE THAT MRS. BASS INTENTIONALLY PROCURED ANY BREACH OF THE 2014 AGREEMENT......11
B. PLAINTIFF'S FALLBACK SEPTEMBER 2024 AGREEMENT (COUNT XI) FAILS FOR THE SAME REASONS......13
II. PLAINTIFF FAILS TO ALLEGE A "CONSTRUCTIVE TRUST" CLAIM AGAINST MRS. BASS (COUNT IX)......15
**CONCLUSION**......21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018)....9, 10

*Armenante v. Flying Colours Corp.*,
2026 WL 775666 (S.D.N.Y. Mar. 18, 2026)....8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....5, 6

*Atateks Foreign Trade Ltd. v. Dente*,
798 F. Supp. 2d 506 (S.D.N.Y. 2011)....19

*Beck v. City of N.Y.*,
No. 12 Civ. 9231 (RA), 2014 WL 80544 (S.D.N.Y. Jan. 3, 2014) (Abrams, J.)....6

*Beecher v. Feldstein*,
8 A.D.3d 597 (2d Dep't 2004)....12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....15

*Bendit v. Canva, Inc.*,No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023) (Abrams, J.)....5, 6

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008)....8

*Capital Access Services Inc. v. Direct Source Seafood, LLC*,
2018 WL 3093967 (S.D.N.Y. June 22, 2018)....12

*Castellotti v. Free*,
138 A.D.3d 198 (1st Dep't 2016)....13

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
546 F. Supp. 3d 204 (W.D.N.Y. 2021)....9, 10, 12

*DarkPulse, Inc. v. EMA Fin., LLC*,2023 WL 2307386 (S.D.N.Y. Mar. 1, 2023)....15

*Felsen v. Sol Cafe Mfg. Corp.*,
24 N.Y.2d 682 (1969)....13

*Foster v. Churchill*,
87 N.Y.2d 744 (1996)....13

*Gan v. GSUIG Real Est. Member LLC*,
797 F. Supp. 3d 69 (E.D.N.Y. 2025) ............................................................ 9, 10, 11

*In re Genger*,
2021 WL 3574034 (Bankr. S.D.N.Y. Aug. 12, 2021) ........................................... 15, 16, 19

*Hedgeye Risk Mgmt., LLC v. Dale*,
2023 WL 6386845 (S.D.N.Y. Sept. 29, 2023) ..................................................................10

*JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*,
710 F. Supp. 3d 259 (S.D.N.Y. 2024)................................................. 1, 7, 9, 10, 11, 12, 14

*Katz v. Katz*,
197 Misc. 412, 95 N.Y.S.2d 863 (Sup. Ct. 1950)................................................................6

*Kohler Co. v. Signature Plumbing Specialties LLC*,2024 WL 4880069 (S.D.N.Y.
Nov. 25, 2024) ..................................................................................................................11

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413, 668 N.E.2d 1370 (1996) .............................................................................7

*Lindberg v. Dow Jones & Co., Inc.*,2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) .......... 1, 10, 15

*Makransky v. Makransky*, 242 A.D.3d 977 (N.Y. App. Div. 2025) .......2, 8, 13, 15, 16, 19, 20, 21

*Mark QQ v. Jennifer PP*,
52 Misc. 3d 519, 34 N.Y.S.3d 875 (N.Y. Fam. Ct. 2016)....................................................6

*McKeown v. Frederick*,39 Misc. 3d 1241(A), 975 N.Y.S.2d 367 (Sup. Ct. 2013)................ 17, 19

*Miller v. Levi & Korsinsky, LLP*,
2021 WL 535599 (S.D.N.Y. Feb. 12, 2021) .........................................................................7

*Morone v. Morone*,50 N.Y.2d 481 (1980) ...........................................................................6, 7

*Nasso v. Bio Reference Lab'ys, Inc.*,892 F. Supp. 2d 439 (E.D.N.Y. 2012)..............................14

*Obergefell v. Hodges*,
576 U.S. 644 (2015) ...........................................................................................................13

*Patrick Powers Custom Brokers, Inc. v. Powers*,
No. 012527/2009, 2010 WL 1830470 (N.Y. Sup. Ct. Apr. 19, 2010) .................................18

*Pena v. Guzman*,
2004 WL 253331 (S.D.N.Y. Feb. 11, 2004) .......................................................................16

*Prysm Group, LLC v. Emeritus Institute of Management PTE Ltd.*,
2025 WL 1827274 (S.D.N.Y. July 2, 2025)..........................................................................12

*R.B. Dev., Co. v. Tutis Capital LLC*,
2012 WL 2357318 (E.D.N.Y. June 20, 2012) .......... 18

*Rock v. Rock*,100 A.D.3d 614 (2d Dep't 2012) .......... 17

*Silver v. Starrett*,
176 Misc. 2d 511, 674 N.Y.S.2d 915 (Sup. Ct. 1998) .......... 6

*Thiam v. Am. Talent Agency, Inc.*,
2012 WL 1034901 (S.D.N.Y. Mar. 27, 2012) .......... 8

*In re Ticketplanet.com*,313 B.R. 46 (Bankr. S.D.N.Y. 2004) .......... 17

*TileBar v. Glazzio Tiles*,
723 F. Supp. 3d 164 (E.D.N.Y. 2024) .......... 10

*Transition Invs., Inc. v. Allen O. Dragge, Jr. Fam. Tr.*,
2011 WL 5865149 (S.D.N.Y. Nov. 21, 2011) .......... 19

*In re Vichele Tops, Inc.*,62 B.R. 788 (Bankr. E.D.N.Y. 1986) .......... 17

*Whiteside v. Hover-Davis, Inc.*,
995 F.3d 315 (2d Cir. 2021) .......... 5

*Yedvarb v. Yedvarb*,
237 A.D.2d 433 (2d Dep't 1997) .......... 8

*Yong Ki Hong v. KBS Am., Inc.*,951 F. Supp. 2d 402 (E.D.N.Y. 2013) .......... 9

*Zwebner v. Strulovitch*,
No. 530498/2021, 2022 WL 445856 (N.Y. Sup. Ct. Jan. 27, 2022) .......... 18

**Statutes**

N.Y. Civil Practice Act § 61-b (1935) .......... 6

N.Y. Civil Rights Law § 80-a .......... 6

N.Y. Gen. Oblig. Law §§ 5-701(a)(1), 5-703(1) .......... 2, 8

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......... 1, 5

Defendant Althea I Viafora Bass ("Mrs. Bass") respectfully submits this Memorandum of Law in Support of her Motion to Dismiss Plaintiff's Amended Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff's Amended Complaint fails to cure deficiencies Mrs. Bass identified in her prior motion to dismiss last month. Mrs. Bass is not a party to the purported oral contracts Plaintiff asserts between Plaintiff and Mr. Bass. Nevertheless, the Amended Complaint attempts to hold Mrs. Bass liable for purported breaches of those oral contracts, without alleging facts sufficient to show that Mrs. Bass was actually involved in or liable for such conduct. Each of the claims Plaintiff attempts to assert against Mrs. Bass is legally deficient for multiple, independent reasons, and each should be dismissed with prejudice.

To begin, each of the tortious interference claims (Counts X and XI) fails because the Amended Complaint omits well-pled allegations that Mrs. Bass knew the details of the alleged oral agreements between Mr. Bass and Plaintiff, and that Mrs. Bass intentionally caused a breach of those agreements. Indeed, even after amending her lengthy Complaint, Plaintiff's allegations regarding Mrs. Bass's knowledge are made "on information and belief," *e.g.*, Amended Complaint ("AC") ¶¶ 43, 323, 325, 330, 338, 339, and fall short of the requisite "specific allegations" explaining how Mrs. Bass knew about and interfered with the oral agreements' essential terms. *See*, *e.g.*, *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 279 (S.D.N.Y. 2024) (granting dismissal despite "conclusory" assertions of knowledge); *see also Lindberg v. Dow Jones & Co., Inc.*, 2021 WL 3605621, at *13 (S.D.N.Y. Aug. 11, 2021) (same despite "information and belief" assertions of knowledge).

As for Plaintiff's allegations that Mrs. Bass "directed" or caused the breaches of contract, those are similarly conclusory. They too are made on "information and belief," *e.g.*, AC ¶ 330, and

are unaccompanied by well-pled allegations showing Mrs. Bass played any role in Mr. Bass's decisions regarding the financial terms offered to Plaintiff or their alleged breach.

Indeed, despite adding to the original complaint, Plaintiff still has not alleged any enforceable oral contract with which Mrs. Bass could have "interfered." This issue is addressed in greater detail in Mr. Bass's brief. It bears emphasizing that the oral contracts at the heart of Counts X and XI are barred by the Statute of Frauds' prohibitions against enforcing oral contracts that are "not to be completed before the end of a lifetime" or that involve the conveyance of real property, *see* N.Y. Gen. Oblig. Law § 5-701(a)(1), § 5-703(1)—prohibitions that each of the two oral contracts at the heart of these claims violate. Moreover, both oral contracts lack sufficiently clear and definite promises by Mr. Bass to Plaintiff. Both contracts therefore cannot support tortious interference claims.

Separately, Plaintiff also fails to allege "constructive trust" against Mrs. Bass under New York law. Plaintiff fails to identify specific property that could be subject to this trust, apart from cooperative shares in an identified apartment in Manhattan (the "Manhattan Apartment"). AC ¶¶ 49, 323. But Plaintiff admits Mr. Bass purchased this residence "after his separation from [Plaintiff]." *Id.* ¶¶ 50, 203. This property therefore cannot sustain multiple legal elements of a constructive trust claim. For example, Plaintiff fails to allege a "clear and definite promise" relating to that property, since Mr. Bass did not own this property at the time of his relationship with Plaintiff. Plaintiff also fails to allege a "transfer in reliance" relating to that property—Plaintiff cannot have "parted with" an interest in that property in reliance on a promise, *Makransky v. Makransky*, 242 A.D.3d 977, 981 (N.Y. App. Div. 2025), when Plaintiff had no interest in that property in the first place. And Plaintiff also cannot avoid the requirement to allege she had a confidential or fiduciary relationship with Mrs. Bass. Plaintiff asserts that she need not allege that

relationship because Mrs. Bass took the apartment "with notice of [Plaintiff's] interests," AC ¶ 322. But Plaintiff fails to allege that anyone told Mrs. Bass that Plaintiff claimed the Manhattan Apartment. The only notice Plaintiff alleges is a letter Plaintiff sent to ***Mr. Bass***, *id.* ¶ 324, and the terms in that letter do not reference the Manhattan Apartment, *id.* ¶ 204.

All claims against Mrs. Bass should be dismissed with prejudice.

## BACKGROUND

The following background addresses the allegations in Plaintiff's Amended Complaint, which are treated as if they are true only for the purposes of this motion to dismiss, and which, in fact, mischaracterize Mrs. Bass's life and reputation. The truth is that Mrs. Bass established a successful professional career and independent life long before entering into a romantic relationship with Mr. Bass. Their marriage followed a longstanding friendship of more than forty years that evolved into a committed romantic partnership. Moreover, although Plaintiff characterized Mr. and Mrs. Bass's marriage as a "sham" in her original complaint, ECF 1 ¶ 193, Plaintiff now acknowledges that Mr. and Mrs. Bass were lawfully married in August 2025. *See* AC ¶ 2.

The Amended Complaint alleges eleven counts in total, but only three counts are alleged against Mrs. Bass: (a) tortious interference with the purported 2014 Agreement (Count X); (b) tortious interference with the purported September 2024 Agreement (Count XI); and (c) constructive trust under New York law (Count IX).

With respect to Count X, Plaintiff alleges that the 2014 Agreement was formed after Mr. Bass and Plaintiff went to lunch in January 2014. AC ¶ 2. The Agreement allegedly included promises of a "partnership," which Plaintiff asserts was intended to last "the rest of their lives." *Id.* ¶ 87. Plaintiff asserts the agreement included financial support for the rest of Plaintiff's life,

and lifetime care for Plaintiff's mother Portia, in exchange for Plaintiff's care for Mr. Bass's properties, Mr. Bass's social obligations, and Mr. Bass himself. *Id.* ¶¶ 2, 5, 19, 87, 265.

Plaintiff's allegations regarding Mrs. Bass's purported knowledge and role in causing a breach of this purported agreement are pleaded only "on information and belief." *Id.* ¶¶ 43, 330. Plaintiff asserts that Mrs. Bass "observed Sid and Oona's arrangement firsthand at the December 2022 lunch," and that "on information and belief, she learned of Sid's commitments to Oona directly from Sid during their lunches and calls in 2023 and 2024." *Id.* ¶ 330. But Plaintiff does not allege what was said at these lunches and phone calls, and does not explain how observing Plaintiff and Mr. Bass's personal relationship can be equated to "observ[ing]" the terms of an unwritten agreement.

Count XI is pleaded "in the alternative" to Count X, and concerns an alternative oral "September 2024 Agreement," pled for the first time in the Amended Complaint. *See id.* ¶ 337. Plaintiff asserts this alternative agreement was formed on September 3, 2024, following the end of Plaintiff and Mr. Bass's relationship and prior to Plaintiff's departure from Mr. Bass's home in Colorado to New York. *See* AC ¶¶ 8, 274. According to Plaintiff, this agreement included promises of a lump-sum payment of $50 million, the East 71st Street Townhouse, a second home in an unidentified location outside New York, continued security, continued administrative and accounting support, and continued payment for Portia's care. *Id.* ¶ 337. Plaintiff does not allege any signed writing memorializing this agreement, and instead alleges that Mr. Bass provided her a written draft "Maintenance Agreement" in January 2025 that changed the terms of the purported agreement. *Id.*

Plaintiff's allegations as to Mrs. Bass's knowledge of this purported alternative agreement also are made "on information and belief." Plaintiff does not allege that Mrs. Bass read this

agreement (because the purported agreement was unwritten). Plaintiff instead asserts that "[o]n information and belief, Sid discussed" it with Mrs. Bass. *Id.* ¶ 339. Plaintiff does not, however, allege facts supporting that speculative allegation. Lacking other support for her claims, Plaintiff references a September 22, 2024 phone call, and says she overheard Mr. Bass's side of that call. *See id.* ¶ 185. But Plaintiff does not allege overhearing any statements suggesting Mrs. Bass had knowledge of the purported promises for $50 million, the East 71st Street Townhouse, or any other specific provision Plaintiff claims she and Mr. Bass discussed nearly three weeks prior.

Finally, Plaintiff also asserts a claim for "constructive trust" against Mrs. Bass relating to real property at the Manhattan Apartment. *See id.* ¶ 327. But Plaintiff admits that property was acquired only ***after*** Plaintiff and Mr. Bass's separation, and Plaintiff does not otherwise allege any facts showing Mrs. Bass could have known Plaintiff claimed an interest in this specific property. Plaintiff does not, for example, allege that Mr. Bass bought the property with any specific funds earmarked for Plaintiff, or that, even if Mr. Bass did buy the property with such funds, Mrs. Bass necessarily knew those details.

## LEGAL STANDARD

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bendit v. Canva, Inc.*, No. 23-CV-473 (RA), 2023 WL 5391413, at *2 (S.D.N.Y. Aug. 22, 2023) (Abrams, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (granting motion to dismiss). "[W]here a plaintiff pleads facts that are merely consistent with a defendant's liability, her complaint stops short of the line between possibility and plausibility, and she fails to demonstrate an entitlement to relief." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323–24 (2d Cir. 2021) (quotations and brackets omitted) (affirming dismissal).

Additionally, because "generalized and conclusory allegations" are "insufficient" to

survive a motion to dismiss, *Bendit*, 2023 WL 5391413, at *6, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Beck v. City of N.Y.*, No. 12 Civ. 9231 (RA), 2014 WL 80544, at *1 (S.D.N.Y. Jan. 3, 2014) (Abrams, J.) (quoting *Iqbal*, 556 U.S. at 678) (granting motion to dismiss).

## ARGUMENT

Nearly one century ago, the New York legislature made clear that claims by non-marital former romantic partners, such as those asserted here by Plaintiff, have no place in court. *See* N.Y. Civil Practice Act § 61-b (1935) ("The rights of action heretofore existing to recover sums of money as damage for the alienation of affections, ... seduction, or breach of contract to marry are hereby abolished") (now codified at N.Y. Civil Rights Law § 80-a). The decision to limit judicial intervention in disputes attending the end of non-marital, romantic relationships is supported by compelling legal and policy reasons. For example, the New York Legislature abolished common-law marriage precisely "because attempts to collect funds from decedents' estates were a fruitful source of litigation" and "there was no built-in method for distinguishing between valid and specious claims." *Morone v. Morone*, 50 N.Y.2d 481, 488 (1980) (addressing this history); *see also Katz v. Katz*, 197 Misc. 412, 413, 95 N.Y.S.2d 863 (Sup. Ct. 1950) (the abolished action for alienation of affections was commonly a "vehicle for fraud and extortion"). For similar reasons, "New York courts have emphatically rejected" awards for "palimony" between unmarried former partners. *Silver v. Starrett*, 176 Misc. 2d 511, 514, 674 N.Y.S.2d 915, 918 (Sup. Ct. 1998). And claims for "alienation of affection," alleging that a partner "had been seduced by another," similarly have been abolished as "in contravention of public policy." *Mark QQ v. Jennifer PP*, 52 Misc. 3d 519, 521–22, 34 N.Y.S.3d 875 (N.Y. Fam. Ct. 2016).

In *Morone*, the New York Court of Appeals further rejected claims for "implied contract" between unmarried romantic partners, reasoning that such claims also are "contrary to both New

York decisional law and the implication arising from our Legislature's abolition of common-law marriage." 50 N.Y.2d at 489. The New York Court of Appeals reasoned that "[f]or courts to attempt through hindsight to sort out the intentions of the parties and affix jural significance to conduct carried out within an essentially private and generally noncontractual relationship runs too great a risk of error." *Id.* at 488. "[T]here is … substantially greater risk of emotion-laden afterthought, not to mention fraud, in attempting to ascertain by implication what services, if any, were rendered gratuitously and what compensation, if any, the parties intended to be paid." *Id.*

This lawsuit violates New York's clear policy preference against judicial adjudication of these non-marital claims and fails to allege plausible claims against Mrs. Bass. The Amended Complaint's vague assertions—e.g., that Mrs. Bass must have known "of [Plaintiff's] established position and rights" (AC ¶ 330)—fall far short of establishing cognizable wrongdoing. Accordingly, the Court should dismiss all claims against Mrs. Bass with prejudice.

## I. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's tortious interference claims (Counts X and XI) fail for multiple, independent reasons. To state a claim for tortious interference with contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *JPMorgan Chase Bank,* 710 F. Supp. 3d at 279; *see also Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370 (1996) (similar). These elements require well-pleaded facts. A party cannot simply "assert in a conclusory manner" that a party knew of and interfered with some vague agreement. *JPMorgan Chase Bank*, 710 F. Supp.

3d at 279; *see also Miller v. Levi & Korsinsky, LLP*, 2021 WL 535599, at *8 (S.D.N.Y. Feb. 12, 2021) (collecting cases dismissing tortious interference claims based on "conclusory allegations").

Plaintiff fails to plausibly allege several necessary elements against Mrs. Bass in connection with both the purported 2014 Agreement and the September 2024 Agreement.

### A. Plaintiff Fails to Allege Tortious Interference with the "2014 Agreement" Between Plaintiff and Mr. Bass (Count X).

As a preliminary matter, Plaintiff fails to allege the first element of a tortious interference claim—namely, the existence of an enforceable agreement. Where a plaintiff "ha[s] failed adequately to allege the existence of a valid … Agreement," there is nothing to interfere with. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 203 (S.D.N.Y. 2008) (granting dismissal). Where breach-of-contract claims are dismissed, related tortious interference claims also must be dismissed. *See*, *e.g.*, *Armenante v. Flying Colours Corp.*, 2026 WL 775666, at *7 (S.D.N.Y. Mar. 18, 2026).

Here, Plaintiff's own allegations show that the 2014 Agreement fails because it is too indefinite and vague, *see* AC ¶ 266, and because any oral agreement for a life together and lifetime support (AC ¶¶ 10, 265) is invalid under New York's Statute of Frauds. *See*, *e.g.*, N.Y. Gen. Oblig. Law §§ 5-701(a)(1), 5-703(1); *see also Yedvarb v. Yedvarb*, 237 A.D.2d 433 (2d Dep't 1997) (promise to "always take care of" a plaintiff invalid). Plaintiff speculates that the agreement could have been funded in one year via a lump-sum payment. *See* AC ¶ 236. But that does not avoid the Statute of Frauds given that the alleged 2014 Agreement included additional life-long promises related to Mr. Bass and Portia's care, *see id.* ¶¶ 5, 19, 34, 56, 87, 135, as well as a transfer of real property, *see id.* ¶ 259. The Amended Complaint thus does not cure the defects in the original Complaint. *See Makransky*, 242 A.D.3d at 979–80; *see also Thiam v. Am. Talent Agency, Inc.*,

2012 WL 1034901, at *4 (S.D.N.Y. Mar. 27, 2012) ("As a general rule, if part of an entire contract is void under the Statute of Frauds, the whole of such contract is void.") (internal citation omitted).

The many reasons why the oral 2014 Agreement is unenforceable are discussed in greater detail in Mr. Bass's brief, which Mrs. Bass incorporates by reference.

Separately and independently, Plaintiff fails to allege other critical elements of tortious interference related to the 2014 Agreement against Mrs. Bass, including, most plainly, Mrs. Bass's knowledge, or role in causing any breach, of the alleged 2014 Agreement.

**1. Plaintiff Fails To Allege Mrs. Bass Had Actual Knowledge of the Oral 2014 Agreement.**

Plaintiff fails to allege an additional critical tortious interference element against Mrs. Bass, namely, "the defendant's knowledge of the contract." *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279. Alleging knowledge for purposes of tortious interference is a high bar. Because tortious interference claims risk liability relating to agreements that defendants did not join, courts require "specific allegations" showing knowledge of the agreement underlying the claim. *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279–80. "[G]eneral awareness that the plaintiff did business with third parties is not enough." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 212 (W.D.N.Y. 2021). "[E]ven … knowledge that some contract existed is insufficient," *id.*; rather, the defendant "must have actual knowledge of the specific contract that is the subject of the claim," *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) (quoting *Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 422 (E.D.N.Y. 2013)). And although Plaintiff need not allege "precise knowledge," she must allege facts showing "some knowledge of the terms and conditions" at issue. *See Corning Inc.*, 546 F. Supp. 3d at 212 (quotations omitted). This knowledge must be more than "constructive"—it is not enough to plead that a defendant "should have known" of another's agreement. *Gan v. GSUIG*

*Real Est. Member LLC*, 797 F. Supp. 3d 69, 106–08 (E.D.N.Y. 2025). Instead, "[a]ctual knowledge [is] required to sustain a cause of action for tortious interference with a contract." *Id.* at 107.

Courts applying these challenging standards routinely dismiss tortious interference claims where plaintiffs make "conclusory assertion[s] of knowledge," or assert that "[a defendant] clearly knew" without alleging specific facts necessary to show that a defendant had actual knowledge of the agreement at issue. *See*, *e.g.*, *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279–80 (granting dismissal, where plaintiffs did not allege facts showing bank would have been aware of specific contracts with third parties, when it froze their accounts); *see also, e.g.*, *Corning Inc.*, 546 F. Supp. 3d at 212; *A.V.E.L.A., Inc.*, 2018 WL 1273343, at *11; *Gan*, 797 F. Supp. 3d at 106–08; *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 201 (E.D.N.Y. 2024) (a "conclusory and speculative allegation is insufficient to plead that [the defendant] had actual knowledge of [the contract], let alone the specific sections allegedly breached …").

Plaintiff's Amended Complaint does not adequately allege knowledge of the purported 2014 Agreement in this case. Plaintiff claims Mrs. Bass "observed Sid and Oona's arrangement firsthand at [a] December 2022 lunch," AC ¶ 330, without explaining how "observ[ing]" personal interactions at a lunch plausibly amounts to learning the terms of a specific contract. Plaintiff also offers additional speculation, on "information and belief," that "[Mrs. Bass] learned of Sid's commitments to Oona directly from Sid during their lunches and calls in 2023 and 2024." *Id.* ¶¶ 250, 330. But such information-and-belief speculation is inadequate as a matter of law: "With regard to tortious interference, allegations of 'actual knowledge' 'may not consist of conclusory assertions of knowledge' or 'pleadings based solely on information and belief.'" *Lindberg*, 2021 WL 3605621, at *13 (granting dismissal); *Hedgeye Risk Mgmt., LLC v. Dale*, 2023 WL 6386845, at *13 (S.D.N.Y. Sept. 29, 2023) (rejecting "information and belief" knowledge allegations); *see*

*also Kohler Co. v. Signature Plumbing Specialties LLC*, 2024 WL 4880069, at *5 (S.D.N.Y. Nov. 25, 2024) (dismissing tortious interference claim based on allegations made "on information and belief," where plaintiff did not allege "what statements were made"). Even if one can surmise that the topic of Mr. Bass's relationship with Plaintiff came up during such lunches and phone calls (and the allegations do not support even that), such discussions would fall short of establishing "actual knowledge" of the terms of the purported contract at issue. *Gan*, 797 F. Supp. 3d at 106–08.

In *Gan*, for example, the court rejected allegations that a party who had "orchestrated the entire arrangement to obtain EB-5 financing for the development of the Project" necessarily knew the terms of an "Operating Agreement" related to that Project. *Id.* at 107–08. The court found knowledge adequately pleaded only where defendants had "reviewed . . . loan documents" and were "required to conduct due diligence regarding the same," and even then the court dismissed the claim on other grounds. *Id.*

Plaintiff falls far short of alleging similar well-pled facts (e.g., reading documents) that could support actual knowledge as to Mrs. Bass here.

**2. Plaintiff Fails To Allege That Mrs. Bass Intentionally Procured Any Breach of the 2014 Agreement.**

To sustain a tortious interference claim, Plaintiff must plausibly allege that Mrs. Bass both caused Mr. Bass to breach the alleged 2014 Agreement and that she did so "without justification." *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279. The Amended Complaint fails to clear this hurdle.

Plaintiff makes only speculative assertions regarding Mrs. Bass's purported causal role in any breach of the 2014 Agreement in this case. To the extent Plaintiff alleges facts about the purported breach, those facts relate to Mr. Bass, not Mrs. Bass: *e.g.*, that "Sid sent" a purported "Maintenance Agreement" allegedly walking back promises of an alleged $50 million lump-sum

payment, AC ¶ 196; that "Sid claimed" liquidity problems prevented payment of that $50 million in a lump sum rather than over time, *id.* ¶ 202; and that "Sid … inform[ed] [Plaintiff] that what he deemed to be her belongings" had been placed into storage, *id.* ¶ 39. These allegations do not plausibly suggest that Mrs. Bass had anything to do with breaches of this agreement. And, while Plaintiff makes additional allegations asserting Mrs. Bass "dictated what would happen to Oona's possessions" and "reviewed and directed reductions to the terms Sid had set out for Oona," these allegations are only more "information and belief" speculation. *See*, *e.g.*, AC ¶ 330; *see also*, *e.g.*, *Prysm Group, LLC v. Emeritus Institute of Management PTE Ltd.*, 2025 WL 1827274, at *5 (S.D.N.Y. July 2, 2025) (dismissing tortious interference claim despite conclusory assertion that defendant "directed" a breach); *Capital Access Services Inc. v. Direct Source Seafood, LLC*, 2018 WL 3093967, at *8 (S.D.N.Y. June 22, 2018) (same where allegations that defendants "directed" a breach were based only "upon information and belief").

Additionally, the Amended Complaint's allegations that Mrs. Bass interrupted Plaintiff and Mr. Bass's "partnership and life together," *see* AC ¶¶ 10, 205, do not satisfy the "without justification" element. *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279. There is nothing wrongful about seeking a personal and romantic relationship with someone else. Even if purported breaches were "incident to [that] … lawful purpose," that is "not enough" to sustain a tortious interference claim. *See Corning Inc.*, 546 F. Supp. 3d at 212; *Beecher v. Feldstein*, 8 A.D.3d 597, 598 (2d Dep't 2004). In *Beecher*, for example, the New York Appellate Division held that even where acquiring a business caused a breach of a lease that the acquirer had knowledge of, that did not show that the acquirer "intentionally procure[d]" the breach. *Id.* Here, Mrs. Bass cannot be said to have "intentionally procured" the end of Plaintiff's relationship, even if that ending might have been incidental to Mrs. Bass's lawful purpose in dating her longtime friend.

Indeed, "[p]rocuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse, and is justification for what would otherwise be an actionable wrong." *Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 687 (1969) (citation omitted); *accord Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996). "The right to marry is a fundamental right inherent in the liberty of the person." *Obergefell v. Hodges*, 576 U.S. 644, 675 (2015). Here, the Amended Complaint admits that Mr. Bass was unmarried when he began to date Mrs. Bass, and Mrs. Bass did not interfere in any legally recognized marital relationship when she and Mr. Bass fell in love. Such allegations fall short of showing that Mrs. Bass acted "without justification" as required to show intentional interference with a contractual relationship.

**B. Plaintiff's Fallback September 2024 Agreement (Count XI) Fails For The Same Reasons.**

"[I]n the alternative to Count X," Plaintiff asserts that Mrs. Bass interfered with a purported oral agreement reached around the end of Mr. Bass and Plaintiff's relationship in September 2024. AC ¶ 337. According to Plaintiff, the terms of this oral agreement included "a lump-sum payment of $50 million; the East 71st Street Townhouse; a second home; continued security and continued support from his secretary and accountants; and continued payment for Portia's care." *Id.* As is again discussed in greater detail in Mr. Bass's brief, this alternative oral agreement also is unenforceable and so cannot support tortious interference claims against Mrs. Bass. *See*, *e.g.*, *Makransky*, 242 A.D.3d at 979–80 (statute of frauds bars claims for real property); *Castellotti v. Free*, 138 A.D.3d 198, 202–04 (1st Dep't 2016) (oral contracts with "intertwined" promises fail in their entirety if one promise is invalid). To the extent Plaintiff asserts she "performed" this agreement by leaving Colorado and traveling to New York (AC ¶ 274), that purported performance is not "explainable only with reference to the oral agreement," and has "more than one potential

explanation," and so cannot avoid dismissal. *See*, *e.g.*, *Nasso v. Bio Reference Lab'ys, Inc.*, 892 F. Supp. 2d 439, 450-51 (E.D.N.Y. 2012) (granting motion to dismiss).

Separately and independently, however, Plaintiff further fails to allege additional elements of her tortious interference claim against Mrs. Bass, even if the September 2024 Agreement were enforceable.

***First***, Plaintiff again fails to allege that Mrs. Bass had "actual knowledge" of the September 2024 Agreement's unwritten terms. *JPMorgan Chase Bank*, 710 F. Supp. 3d at 279. Her allegations are as speculative with respect to the September 2024 Agreement as they were with respect to the 2014 Agreement. Indeed, Plaintiff again relies entirely on "information and belief" allegations, claiming "[o]n information and belief, Sid discussed … terms with her, and … she reviewed them and directed that they be cut back." AC ¶ 338. But Plaintiff does not allege when Mr. Bass "discussed" the terms with Mrs. Bass, which terms he discussed, what Mrs. Bass "reviewed," or which terms she supposedly "directed" be "cut back." *Id.* ¶¶ 338–39.

To the extent Plaintiff relies on a September 22, 2024 phone call, Plaintiff's allegations related to that call do not support "actual knowledge" of essential contract terms. *See* AC ¶ 185. Plaintiff's allegations include irrelevant details—for example, that Mrs. Bass "was insisting that Sid not drive Oona to the airport" and that Oona's possessions be removed from Mr. Bass's Colorado home (AC ¶ 185)—but Plaintiff conspicuously does not allege that the call included discussion of any of the terms of the alleged September 2024 Agreement. Nowhere does Plaintiff allege that Mr. and Mrs. Bass discussed a supposed $50 million payment to Plaintiff, or the conveyance to her of the East 71st Street Townhouse or "second home … outside New York City." AC ¶ 269. Plaintiff therefore does not plausibly allege Mrs. Bass knew the essential terms of the

purported "alternative" unwritten September 2024 Agreement. *Lindberg*, 2021 WL 3605621, at *13.

***Second***, and relatedly, Plaintiff fails to allege that Mrs. Bass caused or procured any breach of this alternative agreement. Plaintiff alleges that "[o]n information and belief," Mrs. Bass "reviewed th[e] terms and directed that they be cut back." AC ¶ 339. Plaintiff's only basis for this allegation is that Mr. Bass wrote that he was making the terms "more fair to himself," a phrase Plaintiff found "odd" and believes was Mrs. Bass's. *Id.* ¶ 195. But that is pure conjecture. Plaintiff's subjective interpretation of language attributed to Mr. Bass does not provide a sufficient factual basis to establish that Mrs. Bass reviewed the alleged agreement, directed changes to its terms, or intentionally procured its breach. Indeed, even if Mr. Bass's phrasing was odd, there is no basis on which to presume that the phrasing was provided by Mrs. Bass, as opposed to any number of other individuals with whom Mr. Bass interacts daily, including, for example, Mr. Bass's own lawyers. AC ¶ 196. Plaintiff's information-and-belief assertion that Mrs. Bass was involved therefore is unsupported and does not "nudge[] [Plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II. PLAINTIFF FAILS TO ALLEGE A "CONSTRUCTIVE TRUST" CLAIM AGAINST MRS. BASS (COUNT IX).

Plaintiff also fails to allege a claim for "constructive trust" against Mrs. Bass. As a preliminary matter, it is an "open question" whether constructive trust is even an independent claim in New York. *See DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *7–8 (S.D.N.Y. Mar. 1, 2023).[1] To the extent constructive trust is cognizable as an independent claim, it is a narrow equitable tool aimed at fraud. It reaches property acquired in circumstances where the acquirer

[1] The Appellate Division recently treated constructive trust as an independent claim, albeit while affirming dismissal for other reasons. *See Makransky*, 242 A.D.3d at 981.

"may not in good conscience retain" it. *In re Genger*, 2021 WL 3574034, at *10 (Bankr. S.D.N.Y. Aug. 12, 2021) (quotation omitted) (granting motion to dismiss). For that reason, "New York law is clear that a constructive trust is an equitable remedy intended to be 'fraud-rectifying' rather than 'intent-enforcing.'" *Id.* (quotation omitted). It does not apply where a plaintiff's claims "are based in contract, not equity," *id.* at *22–23, or where money damages would make the plaintiff whole, *Pena v. Guzman*, 2004 WL 253331, at *3 (S.D.N.Y. Feb. 11, 2004) (dismissing constructive trust claim).

These principles foreclose Count IX, which sounds only in contract and alleges harms that can be redressed by money damages. Plaintiff does not allege that Mrs. Bass made any fraudulent representations. Plaintiff's theory instead is only that Mr. Bass broke purported promises Mr. Bass made to Plaintiff (e.g., for $50 million), and that Mr. Bass later gave Mrs. Bass an interest in cooperative shares in an apartment he bought with his own money. AC ¶¶ 256, 320–21, 325. Plaintiff thus alleges only a contract theory, and a trust built on it would enforce Mr. Bass's alleged promises rather than undo a fraud. Plaintiff's claims "are based in contract, not equity," making a constructive trust unavailable. *Genger*, 2021 WL 3574034, at *22–23. Plaintiff's claim also can be redressed with monetary damages—Plaintiff does not allege that the Manhattan Apartment is uniquely valuable to her, or that money (the same money Plaintiff claims should have been delivered to her) cannot remedy her purported harms. Plaintiff thus cannot state constructive trust claims against Mrs. Bass.

Plaintiff also fails to allege the elements of a constructive trust against Mrs. Bass, even if the claim otherwise were cognizable in this context. Those elements "are (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Makransky*, 242 A.D.3d at 981. These elements must be alleged with reference to specific property.

Constructive trust claims fail where "[i]t is impossible to be certain what property the [plaintiff] is referring to." *In re Ticketplanet.com*, 313 B.R. 46, 69 (Bankr. S.D.N.Y. 2004) (dismissing constructive trust claim); *see also In re Vichele Tops, Inc.*, 62 B.R. 788, 792 (Bankr. E.D.N.Y. 1986) ("[T]he claimant must allege and establish the traceability of the assets before a court will recognize a constructive trust."). Here, Plaintiff alleges her claim extends to, "on information and belief, interests in real property, money, and other assets acquired or transferred for [Mrs. Bass's] benefit," AC ¶ 323, and Plaintiff further requests "an accounting sufficient to identify all assets transferred … to or for the benefit of [Mrs. Bass] from the time she entered Defendant Mr. Bass's life through the present," *id.* at Prayer For Relief. But these allegations do not give notice of what property purportedly is at issue, and further do not allege the elements of constructive trust as to these unspecified assets (there are no allegations of, e.g., a "promise" or "transfer in reliance" relating to them). Plaintiff's claim (and any related demand for an accounting) therefore fails as to property Plaintiff fails to identify.

Plaintiff identifies only one specific property over which she seeks a constructive trust: a "March 2026 conveyance to [Mrs. Bass] of an interest in the [Manhattan Apartment] and its appurtenant cooperative shares and proprietary lease." AC ¶ 323. But Plaintiff does not allege well-pled facts establishing a constructive trust as to that property, either.

***First***, Plaintiff fails to allege a "promise" for purposes of a constructive trust relating to the Manhattan Apartment, for much the same reason that Plaintiff fails to allege a definite oral contract. *See supra* Part I.A–B. "[I]n order to sustain a constructive trust involving real property, the promise ha[s] to be 'clear and unequivocal.'" *McKeown v. Frederick*, 39 Misc. 3d 1241(A), 975 N.Y.S.2d 367 (Sup. Ct. 2013) (citing *Rock v. Rock*, 100 A.D.3d 614, 616, 953 N.Y.S.2d 165 (2d Dep't 2012)). Here, Plaintiff nowhere alleges any such "clear" and "unequivocal" promise

relating to the Manhattan Apartment. To the contrary, Plaintiff admits Mr. Bass purchased the Manhattan Apartment "***after his separation from Oona***." AC ¶¶ 50, 256 (emphasis added). As a matter of logic, Plaintiff cannot allege she was promised this property during her relationship where Mr. Bass did not even own the property at the time. The theory that Plaintiff had "superior legal or equitable rights" (AC ¶ 326) in property that did not even exist at the time of her relationship with Mr. Bass is implausible.

Plaintiff appears to suggest she could have a superior interest in this property because Mr. Bass purchased it after declining to provide Plaintiff with a $50 million lump-sum payment. AC ¶ 256. But Plaintiff does not plausibly allege that any portion of that $50 million necessarily flowed into the Manhattan Apartment. To the contrary, Plaintiff elsewhere asserts Mr. Bass is worth billions of dollars, *see* AC ¶ 4; does not allege any particular funds were escrowed for the benefit of Plaintiff (but then used to buy the property instead), and, moreover, further does not allege that the Manhattan Apartment was purchased with cash at all (as opposed to with a mortgage). The absence of such "tracing" allegations means there is no way to infer that this specific penthouse is a proceed of a breach of contract between Mr. Bass and Plaintiff, much less that Mrs. Bass could be liable for that breach. *See*, *e.g.*, *R.B. Dev., Co. v. Tutis Capital LLC*, 2012 WL 2357318, at *3 (E.D.N.Y. June 20, 2012) (constructive trust "typically lie where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession" (quotations omitted)); *Zwebner v. Strulovitch*, No. 530498/2021, 2022 WL 445856, at *4 (N.Y. Sup. Ct. Jan. 27, 2022) (granting dismissal where "[t]he Amended Complaint does not even attempt to trace any of plaintiff's funds to any specific property"); *Patrick Powers Custom Brokers, Inc. v. Powers*, No. 012527/2009, 2010 WL 1830470 (N.Y. Sup. Ct. Apr. 19, 2010) (same where plaintiff failed to plead "the source

of the funds with which the property was purchased”). The theory that the after-acquired Manhattan Apartment has anything to do with promises made to Plaintiff is speculation. And there certainly is no “clear and unequivocal” promise showing Plaintiff has rights in this real property. *McKeown*, 975 N.Y.S.2d at 10.

***Second***, Plaintiff fails to allege a “transfer in reliance” on a promise. *Makransky*, 242 A.D.3d at 981. “In order to establish that there was a transfer in reliance on [a] promise, it must be shown that the party seeking to impose the constructive trust had some interest in the property prior to obtaining the promise that the property would be conveyed, and that this interest was parted with in reliance on the promise.” *Id.* (quotations omitted). “[N]o constructive trust will be imposed by one who has no interest in the property prior to obtaining a promise that such an interest will be given to him [or her].” *Id.* But here, Plaintiff does not allege she had any interest in the Manhattan Apartment “prior to” obtaining any promise. *Id.* Plaintiff could not have had any interest in the Manhattan Apartment “prior to” a promise, or parted with one in reliance, because the Manhattan Apartment was never part of her life with Mr. Bass.

***Third***, Plaintiff’s “failure to allege a confidential or fiduciary relationship with [Mrs. Bass]” undermines her claim for a constructive trust. *Atateks Foreign Trade Ltd. v. Dente*, 798 F. Supp. 2d 506, 507–08 (S.D.N.Y. 2011) (granting dismissal); *see also Transition Invs., Inc. v. Allen O. Dragge, Jr. Fam. Tr.*, 2011 WL 5865149, at *9 (S.D.N.Y. Nov. 21, 2011) (denying leave to amend as futile, where amended complaint failed to allege a confidential or fiduciary relationship). “To plead the existence of such a relationship, courts require allegations suggesting one party reposing confidence and trust in the other.” *Genger*, 2021 WL 3574034, at *21–22 (quotations omitted). Even familial relationships, standing alone, are inadequate to support constructive trust claims. *Id.*

Additionally, the required confidential relationship must be with the specific defendant at issue. In *Makransky*, a plaintiff claimed interests in property previously belonging to her mother-in-law, and brought claims against both the mother-in-law and certain non-familial buyers. 242 A.D.3d at 977–78. The Appellate Division affirmed dismissal of a constructive trust claim against the buyers because, *inter alia*, "the plaintiff failed to plead the existence of a confidential or fiduciary relationship between herself and the buyers." *Id.* at 981.

Plaintiff alleges no facts showing she reposed trust and confidence in Mrs. Bass. At most, Plaintiff asserts that her relationship with Mr. Bass substitutes for a confidential relationship with Mrs. Bass, asserting that "[e]quity follows property subject to those interests into the hands of any transferee who takes it with notice of Oona's interests or without giving value, and [Mrs. Bass] is such a transferee." AC ¶ 322. But Plaintiff does not allege any interest in the Manhattan Apartment. No enforceable promise gave her one. And neither Mr. Bass nor Mrs. Bass is alleged to have had any interest in the Manhattan Apartment before Plaintiff and Mr. Bass separated, AC ¶¶ 50, 256, so there was nothing for equity to "follow."

Plaintiff also fails to allege that Mrs. Bass had "notice of [Plaintiff's] interests." AC ¶ 322. For good reason—Plaintiff had no such interests at the time of the transfer to Mrs. Bass. Beyond that, Plaintiff's allegations regarding the terms of the purported September 2024 Agreement further undermine the theory that Mrs. Bass could have known of any relationship between the Manhattan Apartment and Plaintiff's purported interests. According to Plaintiff's own allegations, the September 2024 Agreement involved the East 71st Street Townhouse and a "second home" in an unidentified location "outside New York City." AC ¶ 269. But the Manhattan Apartment is not "outside New York City." *Id.* Plaintiff cannot plausibly allege that Mrs. Bass had notice that

Plaintiff claimed rights in the Manhattan Apartment, where those purported rights are contrary to the terms of the September 2024 Agreement even as Plaintiff describes them.

***Fourth***, Plaintiff fails to allege unjust enrichment. *Makransky*, 242 A.D.3d at 981. As discussed above, Plaintiff fails to allege that any specific funds in which she purportedly had an interest flowed into the Manhattan Apartment. Plaintiff further fails to allege that there is anything "unjust" about Mr. Bass purchasing this property and transferring it to Mrs. Bass. Even taken as true, the Amended Complaint at most alleges that Mr. Bass bought shares in the Manhattan Apartment with his own money after his relationship with Plaintiff ended. Plaintiff does not allege that she contributed any money towards Mr. Bass's purchase.

Especially where New York has abolished common-law marriage, *see supra* pp. 6–7, as a matter of public policy, New York rejects exactly the sort of "permanent partner[ship]" claim that Plaintiff here attempts to assert in order to claim property acquired after Plaintiff and Mr. Bass's breakup. AC ¶ 88. Far from inequitable, this result flows directly from the marital choices Plaintiff and Mr. Bass made. Having declined or failed to marry Mr. Bass, Plaintiff cannot assert injustice when Mr. Bass started a new chapter in his life and shared property with Mrs. Bass, his decades-long friend and now his lawfully wedded spouse.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Defendant Althea I Viafora Bass with prejudice.

Dated: November 20, 2026

Respectfully submitted,

By: */s/ Avi Weitzman*
Avi Weitzman
Elise Eckert
PAUL HASTINGS LLP
200 Park Avenue

New York, New York 10166
(212) 318-6920
aviweitzman@paulhastings.com
eliseeckert@paulhastings.com

Joseph Schroeder (*pro hac vice forthcoming*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1979
josephschroeder@paulhastings.com

*Attorneys for Defendant Althea I Viafora Bass*

**WORD COUNT CERTIFICATION**

I, Avi Weitzman, an attorney admitted to practice before this Court and a member of Paul Hastings LLP, counsel for Defendant Althea I Viafora Bass, certify under Local Civil Rule 7.1(c) of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York the following. Defendant Althea I Viafora Bass's Memorandum in Support of Motion to Dismiss the Amended Complaint contains 6,754 words. That count excludes the caption, any index, table of contents, table of authorities, signature block, and this certificate. It was calculated with the word-count feature of the word-processing program used to prepare the memorandum, Microsoft Word. The memorandum therefore complies with the word-count limit in Local Civil Rule 7.1(c).

Dated: November 20, 2026

**PAUL HASTINGS LLP**

By: */s/ Avi Weitzman*
Avi Weitzman